E. MARTIN ESTRADA
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
DANIEL J. O'BRIEN (Cal. Bar No. 141720)
Assistant United States Attorney
Senior Litigation Counsel
Public Corruption & Civil Rights Section
JAMARI BUXTON (Cal. Bar No. 342364)
Assistant United States Attorney
Public Corruption & Civil Rights Section
MAXWELL K. COLL (Cal. Bar No. 312651)
Assistant United States Attorney
Cyber and Intellectual Property Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-2468/3519/1785
    Facsimile: (213) 894-0141
    E-mail:    daniel.obrien@usdoj.gov
                jamari.buxton@usdoj.gov
                maxwell.coll@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>          v.<br><br>ADAM IZA,<br>  aka "The Godfather,"<br>  aka "Ahmed Faiq,"<br>  aka "Diego,"<br>  aka "Diego Facebook,"<br>  aka "Tony Brambilla,"<br>  aka "Leo,"<br><br>       Defendant. | No. CR 24-630(A)-PA<br><br><u>PLEA AGREEMENT FOR DEFENDANT</u><br><u>ADAM IZA</u> |

     1.   This constitutes the plea agreement between Adam Iza

("defendant") and the United States Attorney's Office for the Central

District of California (the "USAO") in the above-captioned case.

This agreement is limited to the USAO and cannot bind any other

federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2. Defendant agrees to:

a. Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a three-count first superseding information ("FSI") in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with violations of 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 241: Conspiracy Against Rights; and 26 U.S.C. § 7201: Evasion of Tax Assessment.

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement.

d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

f. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guideline ("U.S.S.G." or "Sentencing Guideline") § 4A1.2(c) are not within the scope of this agreement.

g. Pay all tax deficiencies, fraud penalties, and statutory interest obligations as provided in paragraph 3 of this agreement.

h.  Pay the applicable special assessments at or before the time of sentencing.

PAYMENT OF TAXES OWED

3.  Defendant admits that he received unreported gross receipts of at least $4,852,750, $18,414,314, $9,341,034, and $3,752,746 for the years 2020, 2021, 2022, and 2023, respectively.  Defendant agrees that:

a.  Defendant is liable for the tax deficiencies resulting from the failure to report this income and the fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6651(f), for his willful and fraudulent failure to file tax returns for the years 2020, 2021, 2022, and 2023.

b.  Defendant will execute closing agreements (the "Closing Agreements") with the Internal Revenue Service ("IRS") within 30 days from the execution of this plea agreement, permitting the IRS to assess and collect:  (1) tax liabilities that total, at a minimum, $1,755,357.00, $6,772,725.00, $3,414,346.00, and $1,343,724.00 for the tax years 2020, 2021, 2022, and 2023, respectively; (2) fraud penalties applicable to such deficiencies in the amounts of $1,316,517.75, $5,079,543.75, $2,560,759.50, and $1,007,793.00, respectively; and (3) statutory interest on the tax liabilities (computed to January 1, 2025), in the amounts of $747,658.50, $2,457,396.98, $843,975.87, and $137,493.01, respectively, as provided by law.

c.  Defendant will make good faith efforts to pay the tax deficiencies, fraud penalties imposed by the Internal Revenue Code, and statutory interest obligations as acknowledged in the Closing Agreements, and as directed by the IRS, prior to sentencing or prior

to June 30, 2025, whichever comes first.

      d.    Defendant gives up any and all objections that could be asserted to the Examination Division of the IRS receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

      e.    Defendant will not file any claim for refund of taxes, penalties, or interest for amounts attributable to the returns filed in connection with this plea agreement.

<u>FORFEITURE AND FINANCIAL ACCOUNTABILITY</u>

4.    Defendant further agrees:

      a.    To forfeit all right, title, and interest in any and all monies, cryptocurrencies, properties, and other assets derived from, or acquired as a result of, the fraudulent sale of access to Facebook advertising accounts or lines of credit, the fraudulent sale of financial interests in Zort, Inc. or "Zort Fund," the fraudulent sale of "Zort Coin," and any business activity engaged in by Zort, Inc., Dream Agency, Rise Agency, Inc., or Atlas Marketing Agency, Inc.  Forfeitable assets shall include: (1) all automobiles and bank accounts identified in the seizure warrants in case numbers (a) 2:24-MJ-6594 (a 2022 Mercedes Bena GLS600Z4, a 2018 Mercedes Benz GTCA, and a 2019 Porsche 911) and (b) 2:24-MJ-6595 (HSBC bank accounts ending in 5108 and 5116), (2) all items seized from premises located at 7 Via Brezza, Newport Coast, California and 43 Beach Road, Dana Point, California as reflected in search warrant inventories produced to the defendant, and (3) all items seized from his person at the time of his arrest with the exception of a gray and gold ring with a dragon design and clear stone and an Audemars Piguet watch yellow

metal with blackface (identified as Asset ID # 24-FBI-006738) (collectively, the "Forfeitable Assets").

　　　　b.　To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

　　　　c.　To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

　　　　d.　Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets, including administrative forfeiture notice #587856 dated November 22, 2024.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

　　　　e.　Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

　　　　f.　Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

　　　　g.　To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.   That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

i.   To the abandonment to the United States of any interest of the defendant in the any firearm or ammunition and to complete any legal documents (including, but not limited to, an ATF Form 3400.1 – Abandonment) required for the transfer of title of such firearms to the United States.

5.   With respect to any criminal forfeiture ordered as a result of this plea agreement, defendant waives: (1) the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the forfeiture in the charging instrument, announcements of the forfeiture sentencing, and incorporation of the forfeiture in the judgment; (2) all constitutional and statutory challenges to the forfeiture (including by direct appeal, habeas corpus or any other means); and (3) all constitutional, legal, and equitable defenses to the forfeiture of the Forfeitable Assets in any proceeding on any grounds including, without limitation, that the forfeiture constitutes an excessive fine or punishment.  Defendant acknowledges that forfeiture of the Forfeitable Assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise defendant of this, pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the time the Court accepts defendant's guilty pleas.

<u>THE USAO'S OBLIGATIONS</u>

6.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

           b.    Abide by all agreements regarding sentencing contained in this agreement.

           c.    At the time of sentencing, move to dismiss the initial indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

           d.    Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

           e.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

           f.    Not further criminally prosecute defendant for federal crimes, including 18 U.S.C. § 1201 (kidnapping), 18 U.S.C. § 1951 (extortion), 18 U.S.C. § 242 (deprivation of rights), 18 U.S.C. § 1028A (aggravated identity theft), 18 U.S.C. § 1029(a)(2) (access device fraud), 18 U.S.C. § 924 (firearms enhancement penalties), 18 U.S.C. § 1503 (obstruction of justice), and 18 U.S.C. § 1001 (false statements) arising out of defendant's conduct alleged in the indictment, the FSI, and the Factual Basis to this plea agreement.  Defendant understands that the USAO is free to criminally prosecute

7

defendant for any other unlawful past conduct not presently known to the USAO or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the dismissed conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

<u>NATURE OF THE OFFENSES</u>

7. Defendant understands that for defendant to be guilty of the crime charged in count one of the FSI, that is, wire fraud, in violation of 18 U.S.C. § 1343, the following must be true: (1) defendant devised or knowingly participated in a scheme or plan to defraud for the purpose of obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts; (2) the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) defendant used, or caused someone to use, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme or plan.

8. Defendant understands that for defendant to be guilty of the crime charged in count two of the FSI, that is, 18 U.S.C. § 241: Conspiracy Against Rights, the following must be true: (1) there was an agreement between two or more persons to injure, oppress, threaten, or intimidate a person or persons in the free exercise or enjoyment of his or her rights secured by the Constitution and laws

of the United States, specifically, the right to be free from unreasonable searches and seizures and the right to be free from deprivation of liberty and property without due process of law by one acting under color of law, (2), defendant knowingly became a member of the conspiracy with the intent to further the conspiracy; and (3) at least one of the victims was present in the State of California.

9.    Defendant understands that for defendant to be guilty of the crime charged in count three of the FSI, that is, 26 U.S.C. § 7201: Evasion of Tax Assessment, the following must be true: (1) defendant owed more federal income tax for the calendar year than was declared due on the defendant's income tax return for that calendar year; (2) defendant knew that more federal income tax was owed than was declared due on the defendant's income tax return; (3) defendant made an affirmative attempt to evade or defeat such additional tax; and (4) in attempting to evade or defeat such additional tax, the defendant acted willfully.

PENALTIES AND RESTITUTION

10.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1343 is: twenty years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 241 is: ten years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from

the offense, whichever is greatest; and a mandatory special assessment of $100.

12. Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 26 U.S.C. § 7201 is: five years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

13. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: thirty-five years imprisonment; a three-year period of supervised release; a fine of $750,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $300.

14. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

15. Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty. Defendant also agrees that the Court may order restitution to compensate losses suffered by any victim as a result of (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3,

in connection with the offenses to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  Defendant also agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty, namely, the individuals, entities, and amounts set forth in the Factual Basis section of this plea agreement.  Defendant understands and agrees that the Court: (a) may order defendant to pay restitution in the form of any additional taxes, interest, and penalties that defendant owes to the United States based upon the count of conviction and other relevant conduct, specifically tax liabilities for the 2020, 2021, 2022, 2023 calendar years; and (b) must order defendant to pay the costs of prosecution, which may be in addition to the statutory maximum fine stated above.  The parties stipulate that the appropriate amount of restitution pertinent to Count Three of the FSI should be the tax deficiencies plus penalties and interest set forth in the Closing Agreements referenced in paragraph 3.  The parties recognize and agree that restitution amounts indicated in this plea agreement could change based on facts that come to the attention of the parties prior to sentencing.

16.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

17.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.   Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.   Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

18.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.   Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.   Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.   Defendant nevertheless affirms that he wants to plead guilty

regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

19.    Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraphs 21, 22, and 23 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Background

Defendant is a United States citizen who resided in Los Angeles and Orange Counties, California during the 2020, 2021, 2022, 2023 calendar years.

On January 30, 2020, defendant incorporated Zort, Inc. ("Zort"). Defendant was engaged in a romantic relationship with Co-Schemer 1. On January 31, 2020, defendant and Co-Schemer 1 jointly opened a Bank of America account for Zort.

At defendant's direction, Co-Schemer 1 created and became the sole director and sole officer of various nominee entities and also opened bank accounts and engaged in financial transactions for the nominee entities.  On February 8, 2021, Co-Schemer 1 incorporated Dream Agency ("Dream").  On April 27 and October 6, 2021, respectively, Co-Schemer 1 opened Bank of America and Chase Bank accounts for Dream.  On April 8, 2022, Co-Schemer 1 incorporated Rise Agency ("Rise").  On April 8, 2022, Co-Schemer 1 opened a Chase Bank

account for Rise.  On April 8, 2022, Co-Schemer 1 caused her personal assistant to incorporate Atlas Marketing Agency, Inc. ("Atlas").  On April 22, 2022, Co-Schemer 1 and her assistant jointly opened a Chase Bank account for Atlas.

<u>Wire Fraud</u>

Facebook, Inc. and Meta Platforms, Inc. (collectively, "Meta") provide major advertising clients with business manager accounts that have access to premium advertising slots on the Facebook platform. These business manager accounts are provided with line of credit that allows a client to post advertisements in advance of making payment. After a line of credit is partially depleted, Meta issues a monthly invoice that requires its client to replenish the account.  Upon receipt of payment, the credit line is restored to its initial spending limit.

During the period December 2020 through September 2024, defendant fraudulently gained access to Meta business manager accounts and their associated lines of credit.  Defendant then sold access to the compromised business manager accounts and lines of credit to various advertising companies thereby making substantial profits.  From approximately 2020 through 2022, defendant received approximately $37 million associated with the sale of access to the Meta advertisement accounts into the Zort, Dream, and Rise bank accounts from domestic and international payors.

As a result of the fraud, Meta clients were billed for, and paid for, advertising expenditures they did not incur.  Where Meta or Meta clients discovered the fraudulent billing, Meta refunded its clients, thereby suffering the loss.

Defendant initially was introduced to the fraudulent scheme

14

through Co-Schemer 2.  Co-Schemer 2 purchased access to the Meta business manager accounts and credit lines from Co-Schemer 3, who resided in Kosovo.  Co-Schemer 3 gained access to the Meta business manager accounts and credit lines through phishing attacks in which Co-Schemer 3 would falsely pose as a legitimate owner of the accounts.  Beginning in December 2020, defendant assisted Co-Schemer 2 in the fraudulent scheme by routing sales proceeds into defendant's business, Zort.  Defendant also received income from Zort via the fraudulent scheme in the form of cryptocurrency.

In January 2021, Co-Schemer 2 asked defendant to hold onto Co-Schemer 2's electronic devices on a temporary basis which defendant then exploited to assume control of the fraudulent Meta scheme. Defendant sent cryptocurrency to Co-Schemer 3 to purchase compromised Meta business manager accounts and credit lines, sold clients access to the compromised accounts, and received payments for such access via wire transfers into Zort's bank account, as well as via cryptocurrency.

As early as May 2021, defendant had personally engaged in phishing against Meta, thereby cutting out Co-Schemer 3 as the middleman.  Defendant fraudulently posed as legitimate Meta clients, accessed Meta client business manager accounts, sold access to the associated lines of credit to his clients, and received payments from clients via wire transfers into the Zort, Dream, and Rise bank accounts.

For example, between January 22 through February 19, 2022, defendant fraudulently accessed a business manager account owned by victim AGM, allocated portions of AGM's lines of credit to four different business manager accounts, and sold access to those lines

of credit to defendant's own clients, which resulted in the following spending against AGM's line of credit:

| Account | Invoiced Amount |
|---------|-----------------|
| XXXX9224 | $13,620 |
| XXXX1908 | $ 6,279 |
| XXXX3506 | $45,174 |
| XXXX0869 | $41,762 |

On February 19, 2022, Meta restricted access to AGM's line of credit based upon suspicious activity on the account. On March 8, 2022, after receiving Meta invoices requesting payments in the amounts referenced above for advertising that AGM had not incurred, AGM notified Meta of the fraud and requested compensation which Meta ultimately provided.

On March 9, 2022, in furtherance of the fraudulent scheme, defendant caused an interstate wire transfer in the amount of $37,540 to be transmitted from a client to Dream's Chase Bank account.

Tax Evasion

From 2020 through 2023, defendant, through Zort, Rise, Dream, and Atlas, received, at a minimum, the following gross income from customers who had purchased fraudulent access to Meta advertisement accounts:

| Year | Amount |
|------|--------|
| 2020 | $ 4,852,750 |
| 2021 | $18,414,314 |
| 2022 | $ 9,341,034 |
| 2023 | $ 3,752,746 |
| **Total** | **$36,360,844** |

resulting in the following losses to the United States Treasury:

16

| Year | Amount |
| --- | --- |
| 2020 | $ 1,755,357 |
| 2021 | $ 6,772,725 |
| 2022 | $ 3,414,346 |
| 2023 | $ 1,343,724 |
| **Total** | **$13,286,152** |

Despite knowing that he had a legal duty to file federal individual tax returns for each of the calendar years 2020 through 2023, defendant failed to file any individual tax returns for any of the calendar years 2020 through 2023.

Despite knowing that he had a legal duty to file federal corporate tax returns on behalf of Zort, defendant failed to file any corporate tax returns for any of the calendar years 2020 through 2023.

Defendant willfully and affirmatively attempted to evade the assessment of the federal taxes due and owing to the United States of America by (a) concealing his ownership and control of Zort, including in his communications with advertising clients, (b) concealing his control of Dream, Rise, and Atlas through the use of a nominee, Co-Schemer 1, (c) causing Co-Schemer 1 to expend funds obtained through the fraudulent schemes to acquire personal items for the benefit of defendant and Co-Schemer 1, and (d) transferring income received by Zort, Dream, Rise, and Atlas to cryptocurrency custodians.

Conspiracy Against Rights

From in or around August 2021 through April 2022, defendant hired off-duty Los Angeles County Sheriff Department ("LASD") deputies to provide him with personal security.

Defendant knowingly and intentionally conspired with these law enforcement officers to obtain confidential law enforcement

information, personally identifiable information ("PII") about persons with whom defendant had financial and other disputes (the "victims"), and court-authorized search warrants to track down and harass the victims.  While using the sobriquet "The Godfather," defendant also knowingly and intentionally enlisted the LASD deputies to intimidate and threaten these victims.  These actions deprived these victims of their free exercise and enjoyment of rights secured to them by the Constitution and laws of the United States, that is, the right to be free from unreasonable searches and seizures and the right to be free from deprivation of liberty and property without due process of law by one acting under color of law.

In furtherance of the conspiracy, defendant, the LASD deputies, and others committed the following overt acts, among others:

On August 16, 2021, at defendant's direction, two LASD deputies unholstered their firearms in defendant's office while defendant demanded that Victim R.C. transfer $25,000 to a Zort bank account that defendant controlled;

On September 24, 2021, at defendant's direction, a LASD deputy, whose private security company defendant was paying approximately $100,000 per month, informed a LASD narcotics detective that a confidential informant reported that Victim R.C. was selling narcotics and storing large quantities of fentanyl and cocaine at Victim R.C.'s residence in Los Angeles; the LASD deputy deliberately did not disclose to the narcotics detective the deputy's relationship with defendant or that defendant was paying the LASD deputy large sums of money;

In or around September 2021, defendant, a Co-Conspirator, and a LASD deputy discussed and agreed to a plan whereby they would cause

Victim R.C. to be arrested with illegal drugs by law enforcement officers;

On September 27, 2021, a Co-Conspirator picked up Victim R.C. in Los Angeles in a vehicle, purportedly to take him to the Co-Conspirator's residence; at defendant direction, the Co-Conspirator made certain that Victim R.C. purchased illegal drugs and made certain that those illegal drugs were placed within the vehicle;

On September 27, 2021, at defendant's direction, a LASD deputy conducted a traffic stop of the vehicle, arrested Victim R.C. for an outstanding arrest warrant, seized narcotics found within the vehicle, and charged Victim R.C. with transportation of a controlled substance, causing Victim R.C. to be jailed for several days;

On October 6, 2021, the LASD narcotics detective who received information about Victim R.C. from the LASD deputy in defendant's employ obtained a warrant from a Los Angeles County Superior Court judge to search Victim R.C.'s residence, which was executed on October 12, 2021;

On October 20, 2021, at defendant's direction, LASD deputies in the defendant's employ restrained Victim L.A. from leaving defendant's residence while defendant held Victim L.A. at gunpoint and forced him to transfer $127,000 into the Dream bank account;

On November 21, 2021, while defendant and Victim E.Z. were meeting outside a gas station/convenience store in Riverside County, and for the purpose of obtaining a laptop containing large amount of cryptocurrency ("the Laptop") that defendant believed to be in the possession of Victim E.Z, one of defendant's bodyguards brandished a firearm at Victim E.Z. at defendant's direction, at which point Victim E.Z. ran and called 911;

Beginning in or around November 2021 and continuing into March 2022, at defendant's direction, LASD deputies in the defendant's employ accessed and/or used sensitive and confidential law enforcement databases to obtain personal identifying information regarding Victim E.Z., Victim D.D., their family members and acquaintances, and others, in violation of LASD policies restricting the use of such databases to official LASD business;

In or around January 2022, defendant and an LASD deputy employed by defendant discussed and agreed that the deputy would attempt to locate Victim E.Z. by obtaining a search warrant related to Victim E.Z.'s telephone number;

On January 6, 2022, the LASD deputy applied for and obtained a search warrant from a Los Angeles County Superior Court judge for GPS location information associated with multiple telephone numbers, including Victim E.Z.'s telephone number; in the sworn affidavit supporting the warrant application, the LASD deputy falsely stated that Victim E.Z.'s telephone number was associated with a suspect in a firearms investigation;

In or around January 2022, at defendant's direction, the LASD deputy used the GPS location information obtained from the warrant to locate Victim E.Z. and a residence where Victim E.Z. was staying;

On March 12, 2022, an individual employed by defendant and at defendant's direction assaulted Victim D.D. and stole a laptop, mistakenly believed by defendant to be the Laptop, from Victim D.D.; and

On March 30, 2022, defendant relayed information to a third party about his desire to have Victim E.Z. relinquish the Laptop through use of force if necessary. As a result, the third party

caused three armed individuals to force entry into Victim E.Z.'s residence and use firearms to force Victim E.Z. to relinquish the Laptop; as the three armed individuals forced open the door of Victim E.Z.'s residence, Victim E.Z. fired in their direction and they fled.

SENTENCING FACTORS

20.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

21.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors apply to the wire fraud count:

| | | |
|---|---|---|
| Base Offense Level | 7 | [U.S.S.G. § 2B1.1(a)] |
| Loss (>$25,000,000) | +22 | [U.S.S.G. § 2B1.1(b)(1)] |
| Sophisticated Means | +2 | [U.S.S.G. § 2B1.1(b)(10)] |

22.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors apply to the tax evasion of a tax assessment count:

| | | |
|---|---|---|
| Base Offense Level (>$9,500,000) | 26 | [U.S.S.G. § 2T4.1] |
| Criminal Activity | +2 | [U.S.S.G. § 2T1.1(b)(1)] |
| Sophisticated Means | +2 | [U.S.S.G. § 2T1.1(b)(2)] |

23.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors apply to the Conspiracy Against Rights:

Base Offense Level (>2 actors)     12 [U.S.S.G. § 2H1.1(a)(2)]

Under Color of Law                 +6 [U.S.S.G. § 2H1.1(b)(1)]

24.   Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

25.   Defendant understands that there is no agreement as to grouping of offenses for the purposes of U.S.S.G § 3D1.2(d).

26.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

27.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

28.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL AND COLLATERAL ATTACK</u>

29.    Defendant gives up the right to appeal all of the following: (a) with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, defendant's convictions on the offenses to which defendant is pleading guilty; (b) the procedures and calculations used to determine and impose any portion of the sentence; (c) the term of imprisonment imposed by the Court, including, to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximums; (d) the fine imposed by the Court, provided it is within the statutory maximums; (e) the amount and terms of any restitution order; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the conditions of probation or supervised release imposed by the Court as set forth in Second Amended General Order 20-04 of this Court, the drug testing conditions mandated by 18 U.S.C. §§

3563(a)(5) and 3583(d), and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

30.  Defendant also gives up any right to bring a post-conviction collateral attack on the convictions or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

31.  Defendant understands that these waivers include, but is not limited to, arguments that the statutes to which defendant is pleading guilty is unconstitutional, and any and all claims that the Factual Basis provided herein is insufficient to support defendant's pleas of guilty.

32.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum and (b) the amount of restitution ordered with respect to count three is equal to or greater than the amounts set forth in the Closing Agreements, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered with respect to counts one and three.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

33.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to

24

pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

34. Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining counts of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty pleas on any remaining counts of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining convictions, sentence, and plea agreement intact. Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

### EFFECTIVE DATE OF AGREEMENT

35. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

36. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required

certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a. If defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas;

b. The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crimes to which defendant has pleaded guilty; and (ii) will no longer be bound by any agreements regarding criminal prosecution, and will be free to criminally prosecute defendant for any crime, including charges that the USAO would otherwise have been obligated to dismiss or not to criminally prosecute pursuant to this agreement.

c. The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

37. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

38.    Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

39.    Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraphs 21, 22, and 23 are consistent with the facts of this case.  This paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed

as inconsistent with the Factual Basis or Sentencing Factors agreed to in this agreement.

40. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

41. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

//
//
//
//
//
//
//
//
//
//

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

42. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

_____        01/14/25
DANIEL J. O'BRIEN                 Date
J. JAMARI BUXTON
MAXWELL COLL
Assistant United States Attorneys


_____        1/13/25
ADAM IZA                          Date
Defendant


_____        1/13/25
JOSEF SADAT                       Date
Attorney for Defendant ADAM IZA


## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has

1  advised me of my rights, of possible pretrial motions that might be
2  filed, of possible defenses that might be asserted either prior to or
3  at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),
4  of relevant Sentencing Guidelines provisions, and of the consequences
5  of entering into this agreement.  No promises, inducements, or
6  representations of any kind have been made to me other than those
7  contained in this agreement.  No one has threatened or forced me in
8  any way to enter into this agreement.  I am satisfied with the
9  representation of my attorney in this matter, and I am pleading
10 guilty because I am guilty of the charges and wish to take advantage
11 of the promises set forth in this agreement, and not for any other
12 reason.

_____        Date 1/13/25
ADAM IZA
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

      I am ADAN IZA's attorney.  I have carefully and thoroughly
discussed every part of this agreement with my client.  Further, I
have fully advised my client of his rights, of possible pretrial
motions that might be filed, of possible defenses that might be
asserted either prior to or at trial, of the sentencing factors set
forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
provisions, and of the consequences of entering into this agreement.
To my knowledge: no promises, inducements, or representations of any
kind have been made to my client other than those contained in this
agreement; no one has threatened or forced my client in any way to

1  enter into this agreement; my client's decision to enter into this

2  agreement is an informed and voluntary one; and the Factual Basis set

3  forth in this agreement is sufficient to support my client's entry of

4  guilty pleas pursuant to this agreement.

5

6  JOSEF SADAT                                    Date 1/13/25
   Attorney for Defendant ADAM IZA

7

8

EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>ADAM IZA,<br>      aka "The Godfather,"<br>      aka "Ahmed Faiq,"<br>      aka "Diego,"<br>      aka "Diego Facebook,"<br>      aka "Tony Brambilla,"<br>      aka "Leo,"<br><br>            Defendant. | No. 2:23-00630(A)-PA<br><br>F I R S T<br>S U P E R S E D I N G<br>I N F O R M A T I O N<br><br>[18 U.S.C. § 241: Conspiracy Against Rights; 18 U.S.C. § 1343: Wire Fraud; 26 U.S.C. § 7201: Evasion of Tax Assessment; 18 U.S.C. §§ 924(d)(1) and 982, 26 U.S.C. § 7301, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

     The United States Attorney charges:

                    INTRODUCTORY ALLEGATIONS

     At times relevant to this First Superseding Information:

     Defendant ADAM IZA, also known as ("aka") "The Godfather," aka "Ahmed Faiq," aka "Diego," aka "Diego Facebook," aka "Tony Brambilla," aka "Leo" ("IZA"), was a citizen of the United States and

resided in Los Angeles County and Orange County, California, within the Central District of California.

Co-Conspirator 1 was a citizen of the United States and resided in Los Angeles County and Orange County, California.

The Los Angeles County Sheriff's Department ("LASD") was a law enforcement agency within the Central District of California. Among other responsibilities, the LASD provided municipal police services within Los Angeles County, California, through its thousands of sworn deputies.

LASD Deputy 1, LASD Deputy 2, LASD Deputy 3, LASD Deputy 4, LASD Deputy 5, and LASD Deputy 6 were sworn law enforcement officers employed by the LASD. As LASD deputies, LASD Deputy 1, LASD Deputy 2, LASD Deputy 3, LASD Deputy 5, and LASD Deputy 6 were subject to an oath of duty and rules of conduct. This oath and these rules prohibited LASD personnel from using their law enforcement status and related equipment for personal use or for non-legitimate law enforcement purposes.

By virtue of their positions, LASD Deputy 1, LASD Deputy 2, LASD Deputy 3, LASD Deputy 4, LASD Deputy 5, and LASD Deputy 6 had access to sensitive law enforcement databases and other confidential databases from which they could obtain personally identifiable information ("PII") regarding individuals, including addresses, registered vehicles, and criminal backgrounds.

LASD Deputy 1 was also a federal Task Force Officer ("TFO") assigned to a task force involving a federal law enforcement agency.

Defendant IZA and Victim E.Z. were engaged in a dispute involving a laptop computer believed to contain over $100 million in

cryptocurrency accessible through multiple passcodes and private keys.

Zort, Inc. ("Zort") was a company that had developed an artificial intelligence-based cryptocurrency trading platform. Defendant IZA incorporated Zort on or about January 30, 2020, in the State of Delaware. Zort was registered with the Internal Revenue Service ("IRS") as a C corporation.

Dream Agency ("Dream") was a purported social media company that Co-Conspirator 1 incorporated on or about February 8, 2021, in the State of California. Co-Conspirator 1 was the sole director and officer of Dream. Dream was registered with the IRS as an S corporation, using Co-Conspirator 1's Social Security number.

Rise Agency, Inc. ("Rise") was a purported e-commerce company that Co-Conspirator 1 incorporated on or about April 8, 2022, in the State of California. Initially, Co-Conspirator 1 was the sole director and officer of Rise. Defendant IZA replaced Co-Conspirator 1 as the Chief Executive Officer ("CEO") and director of Rise on or about November 3, 2022. Rise was registered with the IRS as an S corporation, using Co-Conspirator 1's Social Security number.

Defendant IZA and Co-Conspirator 1 opened and had signatory authority over Zort corporate bank accounts, including accounts at Bank of America ("BOA") and JPMorgan Chase Bank ("Chase"). Defendant IZA and Co-Conspirator 1 were the only signatories on the Zort bank accounts.

Co-Conspirator 1 opened and had signatory authority over Dream corporate bank accounts, including accounts at BOA and Chase. Co-Conspirator 1 was the sole signatory on the Dream bank accounts.

Co-Conspirator 1 opened and had signatory authority over a Rise corporate bank account with Chase. Initially, Co-Conspirator 1 was the sole signatory on the Rise bank account. On or about May 4, 2022, defendant IZA was added as a signatory to the Rise bank account.

Meta Platforms, Inc., formerly named Facebook, Inc. (collectively, "Meta"), was a multinational technology company that owned and operated the Facebook platform, a social media and social networking service. Meta provided major advertising clients with business manager accounts that had access to premium advertising slots on the Facebook platform. These business manager accounts were provided with a line of credit that allowed for the posting of advertisements in advance of payment. After a line of credit was partially depleted, Meta issued a monthly invoice that required its client to replenish the account. Upon receipt of payment, the credit line was restored to its initial spending limit.

Defendant IZA used fictitious names, including "Diego Facebook," "Tony Brambilla," and "Leo," to communicate with customers purchasing access to the business manager accounts and lines of credit. Defendant IZA, communicating through his aliases, instructed customers to send payments to the Zort, Dream, and Rise bank accounts. Defendant IZA, communicating through his aliases, told customers that Zort was his over-the-counter broker through which he would receive payment, thereby concealing his direct control over Zort and its bank accounts.

The IRS was an agency of the United States Department of Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

IRS Form 1040, U.S. Individual Income Tax Return ("Form 1040"), was a form generally used by individual U.S. taxpayers to file annual income tax returns.

IRS Form 1120, U.S. Corporation Income Tax Return ("Form 1120"), was a form generally used to report the income, gains, losses, deductions, and credits of a C corporation.

Defendant IZA derived substantial gross income from the sale of Meta advertising; used the Zort, Dream, and Rise bank accounts to receive such income; funneled the proceeds to his and Co-Conspirator 1's personal bank accounts; and used the proceeds for defendant IZA's and Co-Conspirator 1's personal benefit.

From approximately 2020 through 2022, defendant IZA and Co-Conspirator 1 received approximately $37 million associated with the sale of access to the Meta advertisement accounts into the Zort, Dream, and Rise bank accounts from domestic and international payors.

These Introductory Allegations are incorporated into each count of this First Superseding Information.

COUNT ONE

[18 U.S.C. § 241]

OBJECT OF THE CONSPIRACY

Beginning on a date unknown and continuing through in or around June 2022, in Los Angeles County, Orange County, and Riverside County, within the Central District of California, and elsewhere, defendant ADAM IZA, and others known and unknown to the United States Attorney, conspired and agreed with each other to knowingly and intentionally injure, oppress, threaten, and intimidate persons of the State of California, namely, Victim R.C., Victim L.A., Victim E.Z., and Victim D.D., in the free exercise and enjoyment of rights secured to them by the Constitution and laws of the United States, that is, the right to be free from unreasonable searches and seizures and the right to be free from deprivation of property without due process of law by one acting under color of law.

More specifically, defendant IZA and others known and unknown to the United States Attorney would enter into a scheme to intimidate, harass, and threaten individuals with whom defendant IZA had disputes and to obtain property, including by using confidential information and court-authorized search warrants obtained by LASD deputies in their official capacities.

MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

Defendant IZA would hire active LASD deputies to act as his personal bodyguards, accompanying him 24 hours per day and seven days per week.

Defendant IZA and Co-Conspirator 1 would pay large sums of money for the LASD deputies' services, including through cash payments and wire transfers from the Zort and Dream bank accounts.

The LASD deputies often would carry firearms and/or brandish their LASD badges while accompanying defendant IZA.

Defendant IZA would inform the LASD deputies about individuals with whom he had personal and/or monetary disputes and obtain the LASD deputies' assistance in gathering information about those individuals; obtaining property from them; and/or retaliating against them.

The LASD deputies would use their powers as sworn law enforcement officers to improperly access sensitive law enforcement databases and other confidential databases to obtain PII about individuals, including addresses, registered vehicles, and criminal backgrounds.

The LASD deputies would use their powers as sworn law enforcement officers to improperly obtain court-authorized search warrants related to individuals with whom defendant IZA had disputes, including warrants to search individuals' residences and to obtain location information associated with those individuals.

Defendant IZA, the LASD deputies, and their associates would use confidential information that the LASD deputies obtained in their official capacities to locate, intimidate, harass, threaten, and extort individuals with whom defendant IZA had disputes and/or their associates.

Defendant IZA, the LASD deputies, and their associates would plan to steal, attempt to steal, and steal property from individuals with whom defendant IZA had disputes and/or their associates.

Defendant IZA, the LASD deputies, and their associates would intimidate, harass, and threaten individuals with whom defendant IZA had disputes and/or their associates, including by threatening violence and by using confidential information that the LASD deputies obtained in their official capacities.

Defendant IZA and the LASD deputies and other associates would conceal their activities by communicating using encrypted communications applications, including Telegram, to avoid law enforcement detection.

OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish the object of the conspiracy, defendant IZA and others known and unknown to the United States Attorney, committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including the following:

***Scheme Involving Victim R.C.***

On August 16, 2021, during a meeting between defendant IZA and Victim R.C. at defendant IZA's residence in the Bel Air neighborhood of Los Angeles, defendant IZA, who had multiple firearms in his immediate vicinity, demanded that Victim R.C. refund money to defendant IZA in connection with an event Victim R.C. threw at defendant IZA's residence on or about August 15, 2021.

On August 16, 2021, during the meeting at defendant IZA's residence, LASD Deputy 5 and LASD Deputy 6 held Victim R.C. at gunpoint in defendant IZA's presence.

On August 16, 2021, through the use of R.C.'s phone, defendant IZA caused approximately $25,000 to be transferred from Victim R.C.'s business's bank account to a bank account for Zort.

In or around August 2021, defendant IZA began communicating regularly with Victim R.C.'s then-romantic partner, Co-Conspirator 2, who attended the event at defendant IZA's Bel Air residence with Victim R.C. on or about August 15, 2021.

On August 17, 2021, defendant IZA caused a text message to be sent to Victim R.C. stating: "Bother [Co-Conspirator 2] again and you will know who I am. Text or call [Co-Conspirator 2] again and I will show up at your house."

In or around August 2021, defendant IZA engaged LASD Deputy 1's company, Security Company 1, to provide security-related services for defendant IZA.

Beginning in or around August 2021, defendant IZA directed payments to LASD Deputy 1 and/or Security Company 1 of approximately $100,000 per month through a combination of wire transfers and cash payments from the Zort and Dream bank accounts.

In or around August 2021, LASD Deputy 1 began assigning teams of active LASD deputies to accompany defendant IZA 24 hours per day and seven days per week.

In or around mid-to-late 2021, defendant IZA separately engaged LASD Deputy 2 to provide security-related services for defendant IZA.

Beginning in or around fall 2021, defendant IZA caused tens of thousands of dollars to be transferred from Zort, Dream, and Co-Conspirator 1 to two businesses associated with LASD Deputy 2.

On September 24, 2021, LASD Deputy 1, after conferring with defendant IZA and/or others, contacted a LASD narcotics detective and

40

1  informed him that a confidential informant had said that Victim R.C.

2  was selling narcotics and storing large quantities of fentanyl and

3  cocaine at Victim R.C.'s residence in Los Angeles, while deliberately

4  concealing that LASD Deputy 1 had a business relationship with

5  defendant IZA and that defendant IZA was paying LASD Deputy 1 and/or

6  Security Company 1 large sums of money.

7      In or around September 2021, defendant IZA, Co-Conspirator 2,

8  and LASD Deputy 2 discussed and agreed to a plan whereby they would

9  cause Victim R.C. to be arrested with illegal drugs by law

10 enforcement officers.

11     In or around late September 2021, at defendant IZA's direction,

12 Co-Conspirator 2 contacted Victim R.C., who was in Florida, and

13 persuaded Victim R.C. to return to Los Angeles.

14     In or around late September 2021, Co-Conspirator 2 paid for a

15 flight for Victim R.C. to travel from Florida to Los Angeles, at

16 defendant IZA's direction.

17     On September 26, 2021, defendant IZA met with Co-Conspirator 2

18 and gave Co-Conspirator 2 hundreds of dollars for Victim R.C. to use

19 to purchase illegal drugs.

20     On September 27, 2021, Co-Conspirator 2, who was communicating

21 with defendant IZA, picked up Victim R.C. in Los Angeles in a

22 vehicle, purportedly to take Victim R.C. to Co-Conspirator 2's

23 residence.

24     On September 27, 2021, Victim R.C. used the money defendant IZA

25 gave Co-Conspirator 2 to purchase illegal drugs.

26     On September 27, 2021, LASD Deputy 4 conducted a traffic stop of

27 the vehicle driven by Co-Conspirator 2, in which Victim R.C. was a

28

passenger, in Paramount, California, after purportedly observing a lane violation.

On September 27, 2021, after speaking with Co-Conspirator 2 and Victim R.C., LASD Deputy 4 indicated that Victim R.C. had an outstanding warrant and placed Victim R.C. in the back of a LASD patrol vehicle.

On September 27, 2021, LASD Deputy 4 searched Co-Conspirator 2's vehicle and found a plastic bag containing suspected cocaine under the front passenger seat, where Victim R.C. had been seated, and two bags containing psilocybin mushrooms inside Victim R.C.'s backpack.

On September 27, 2021, based upon the traffic stop, LASD Deputy 4 caused Victim R.C. to be charged with transportation of a controlled substance and jailed for several days before the charges were dropped for lack of sufficient evidence.

On September 27, 2021, defendant IZA communicated with Co-Conspirator 2 before, during, and after the traffic stop and arrest of Victim R.C.

On September 27, 2021, defendant IZA and LASD Deputy 2 traveled to Paramount and observed Victim R.C.'s arrest, including from inside defendant IZA's vehicle, and caused photographs and/or videos of the incident to be taken.

On October 1, 2021, defendant IZA caused text messages to be sent to Victim R.C. containing a photograph of Victim R.C.'s booking photograph and stating: "Worthless loser.  Congrats on the drug felony arrest."

On October 1, 2021, defendant IZA caused text messages to be sent to Victim R.C. that stated, "For a drug dealer, you fucked with

the wrong people," along with a photograph of Victim R.C.'s September 27, 2021 arrest in progress.

On October 2, 2021, after Victim R.C. complained Co-Conspirator 2 via text about being set up, defendant IZA caused a text message to be sent to Victim R.C. stating: "The cops had you on their watch list for week, so go complain to them [a]bout setting you up.  Hahaha. Worthless loser."

In or around early October 2021, after the LASD narcotics detective whom LASD Deputy 1 contacted obtained a warrant from a Los Angeles County Superior Court Judge to search Victim R.C.'s residence, LASD Deputy 1 received a communication from the LASD narcotics detective that officers did not find any illegal drugs inside Victim R.C.'s residence during the search, which took place on or about October 12, 2021 and during which Victim R.C. was detained in an LASD vehicle.

### *Scheme Involving Victim L.A.*

On or about October 21, 2021, defendant IZA caused Victim L.A., with whom defendant IZA had a business dispute, to visit defendant's residence in the Bel Air neighborhood of Los Angeles, where several security guards, including LASD Deputy 2, were present.

On or about October 21, 2021, while at defendant IZA's residence, defendant IZA held Victim L.A. at gunpoint, asked whether Victim L.A. had scammed defendant IZA, and threatened to harm Victim L.A. if Victim L.A. failed to pay defendant IZA.

On or about October 21, 2021, after defendant IZA held Victim L.A. at gunpoint, Victim L.A. transferred approximately $127,000 to defendant IZA.

**_Scheme Involving Victim E.Z. and Victim D.D._**

On November 15, 2021, defendant IZA hired Private Investigator 1 to locate and surveil Victim E.Z., with the intent to recover a laptop from Victim E.Z. that defendant IZA believed to contain millions of dollars in cryptocurrency.

On November 21, 2021, while defendant IZA and Victim E.Z. were meeting outside a gas station/convenience store in Riverside County, at least one of defendant IZA's bodyguards, who followed Victim E.Z.'s vehicle to the location, approached Victim E.Z. carrying a firearm.

On November 21, 2019, defendant IZA's armed bodyguard attempted to restrain Victim E.Z., causing him to run away and call 911.

On November 21, 2021, after Victim E.Z. fled, defendant IZA and his bodyguards stole two bags from the trunk of Victim E.Z.'s vehicle and left.

Beginning in or around late 2021 and continuing into March 2022, LASD Deputy 1 and LASD Deputy 3 accessed and used sensitive law enforcement databases and confidential databases to which LASD deputies had access to obtain PII for Victim E.Z.; Victim E.Z.'s associate, Victim D.D.; Victim D.D.'s family members; and others.

On December 2, 2021, defendant IZA caused text messages to be sent to Victim E.Z. containing photographs of confidential database reports showing Victim E.Z.'s PII, including Victim E.Z.'s home address and vehicles registered to Victim E.Z.

On December 15, 2021, defendant IZA and several others, including LASD Deputy 1, traveled to Victim D.D.'s residence in Orange County in search of Victim E.Z. and/or the laptop containing cryptocurrency on it.

On December 15, 2021, while outside Victim D.D.'s residence, LASD Deputy 1 identified himself as a law enforcement officer and displayed his badge in hopes of recovering the laptop for defendant IZA.

In or around January 2022, defendant IZA and LASD Deputy 1 discussed and agreed that LASD Deputy 1 would attempt to locate Victim E.Z. by obtaining a search warrant related to Victim E.Z.'s telephone number.

On January 6, 2022, LASD Deputy 1 applied for and obtained a search warrant under false pretenses from a Los Angeles County Superior Court Judge for GPS location information associated with multiple telephone numbers, including Victim E.Z.'s number.

On January 6, 2022, in the sworn affidavit supporting the warrant application, LASD Deputy 1 falsely stated that Victim E.Z.'s telephone number was associated with a suspect in a firearms investigation.

In or around January 2022, after securing the warrant for GPS location information associated with Victim E.Z.'s phone, LASD Deputy 1 used the GPS location information to locate Victim E.Z. and a residence where Victim E.Z. was staying.

On January 19, 2022, defendant IZA sent a text message to Private Investigator 1 stating, "I found where [Victim E.Z.] staying," and provided Victim E.Z.'s address.

On January 19, 2022, defendant IZA told Private Investigator 1 that Victim E.Z. was located by pinging Victim E.Z.'s phone and said: "The ping was done by law enforcement themselves . . . It took a Warrant . . . And had to get signed by judge."

On March 12, 2022, Co-Conspirator 3 and Private Investigator 1 met to discuss plans to take a laptop from Victim D.D., whom defendant IZA believed was in possession of the laptop.

On March 12, 2022, Co-Conspirator 3 traveled to a location in Orange County where Victim D.D. was visiting, surveilled the location, physically assaulted Victim D.D., and stole a laptop that Victim D.D. had in Victim D.D.'s possession.

On March 12, 2022, Co-Conspirator 3 went to defendant IZA's residence in Bel Air and presented the laptop to defendant IZA; defendant IZA later determined that the stolen laptop was not the device believed to contain millions in cryptocurrency.

On March 13, 2022, defendant IZA caused a text message to be sent to Victim E.Z. containing photographs of Victim E.Z.'s family members and Victim E.Z.'s car and stating, "Everyone you know."

On March 14, 2022, defendant IZA caused threatening messages to be sent to Victim D.D.

On March 30, 2022, defendant IZA caused three armed individuals to force entry into Victim E.Z.'s residence and use the firearms to force Victim E.Z. into relinquishing a laptop; as the three individuals forced the door open, Victim E.Z. fired a gun in the direction of the three armed individuals, causing them to flee.

In or around early June 2022, defendant IZA caused a video to be sent to Victim E.Z. of the attempted home invasion of Victim E.Z.'s residence.

COUNT TWO

[18 U.S.C. § 1343]

A.   THE SCHEME TO DEFRAUD

Beginning in or about December 2020 and continuing through September 2024, in Los Angeles County and Orange County, within the Central District of California, and elsewhere, defendant ADAM IZA, together with others known and unknown to the United States Attorney, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud Meta, Atlas Marketing Group ("AGM"), and other major Meta advertising clients of money and property through the use of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

B.   MEANS AND METHODS OF THE SCHEME TO DEFRAUD

The scheme to defraud operated in the following manner:

a.   Defendant IZA would fraudulently gain access to Meta business manager accounts and their associated lines of credit.  In doing so, defendant IZA fraudulently posed as legitimate Meta clients, accessed Meta client business manager accounts, and converted available lines of credit to his own use.

b.   Defendant IZA would sell access to compromised business manager accounts and lines of credit to various advertising companies.  Defendant IZA would receive payments from these advertising companies via wire transfers into Zort, Dream, and Rise bank accounts as well as via cryptocurrency transfers.

c.   Meta clients would be billed for advertising expenditures they did not incur.  Where Meta and/or Meta clients were unaware of the improper billing, the Meta client would pay the invoice and incur a financial loss.  Where Meta or Meta clients

47

discovered the improper billing, Meta made its clients whole, thereby transferring the loss to Meta.

d.    As an example, within the period January 22 through February 19, 2022, defendant IZA fraudulently accessed a business manager account owned by Victim A, allocated portions of Victim A's line of credit to four different business manager accounts, and sold access to those business manager accounts and lines of credit to his own clients.  Defendant IZA's clients thereafter engaged in advertising spending, backed by Victim A's line of credit, which Meta then billed to Victim A through the following invoices:

| Account | Invoiced Amount |
|---------|-----------------|
| XXXX9224 | $13,620 |
| XXXX1908 | $ 6,279 |
| XXXX3506 | $45,174 |
| XXXX0869 | $41,762 |

C.    USE OF WIRES

43.    On or about March 9, 2022, within the Central District of California, and elsewhere, defendant IZA, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission of, by means of a wire communication in interstate commerce, a wire transfer in the amount of $37,540 from one of defendant IZA's clients into Dream's Chase Bank account.

COUNT THREE

[26 U.S.C. § 7201]

Between in or about January 2021 and through on or about April 18, 2022, in Los Angeles County and Orange County, within the Central District of California, and elsewhere, defendant ADAM IZA willfully and affirmatively attempted to evade and defeat the assessment of approximately $6,772,725 in federal income taxes due and owing to the United States of America, for the calendar year 2021, by committing the following affirmative acts, among others:

a.   In or around February 2021, defendant IZA caused Co-Conspirator 1 to incorporate Dream, act as its sole director and officer, and open bank accounts to act as a shell corporation through which income from the fraudulent schemes could be directed.

b.   On or about April 18, 2022, defendant IZA failed to file a Form 1040 for the calendar year 2021, to conceal and avoid reporting to the IRS the gross income defendant IZA obtained from Zort and Dream.

c.   On or about April 18, 2022, defendant IZA failed to file a Form 1120 for the calendar year 2021, to conceal and avoid reporting to the IRS the gross income Zort obtained from the fraudulent schemes.  Defendant IZA concealed and attempted to conceal, and caused Co-Conspirator 1 to conceal and attempt to conceal, defendant IZA's interest in Zort and Dream, including in corporate filings, financial documents, civil litigation, and communications with payors,  and tax preparers.

d.   Defendant IZA sent approximately $11,115,975 from Zort's BOA and Chase bank accounts to a Singapore-based investment firm for the purchase of cryptocurrency, to conceal and avoid reporting to the

IRS gross income received by Zort.

  e. Defendant IZA used Zort and Dream corporate bank accounts, and caused Co-Conspirator 1 to engage in transactions involving Zort and Dream corporate bank accounts, including direct payments, cashier's checks, cash withdrawals, and credit card payments, to expend funds obtained through the fraudulent schemes to acquire personal items for the benefit of defendant IZA and Co-Conspirator 1, including, but not limited to, the following:

  i. Defendant IZA made lease payments of $78,579 per month on a 2019 Ferrari 488 Pista and $21,943 per month on a 2019 Lamborghini Aventador SVJ using funds from Zort's BOA bank account.

  ii. On or about March 15, 2021, defendant IZA leased a third car, a 2021 Lamborghini Aventador SVJ Roadster, in Zort's name, using funds from Zort and Dream bank accounts.  Defendant IZA and Co-Conspirator 1 spent $204,072 on the downpayment and $53,792 on monthly payments.

  iii. On or about June 30, 2021, defendant IZA leased a residential property in Bel Air with a monthly rent of $200,000. Defendant IZA spent a total of approximately $1,640,007 from Zort's business accounts to pay for the security deposit and rent for this residential property.

  iv. Defendant IZA and Co-Conspirator 1 spent approximately $280,000 for rent on a residential property in the Newport Coast neighborhood, using funds from Zort and Dream bank accounts.

  v. Defendant IZA and Co-Conspirator 1 withdrew approximately $770,000 in cash from Zort and Dream bank accounts, including $263,000 from Zort's BOA account, $120,000 from Zort's Chase account, and $387,000 from Dream's BOA account.

vi.  Defendant IZA and Co-Conspirator 1 purchased approximately $667,255 in luxury goods using funds from Zort and Dream bank accounts.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count One of this First Superseding Information.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the convicted defendant shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of any defendant's conviction of the offense set forth in Count Two of this First Superseding Information.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

1                    FORFEITURE ALLEGATION THREE

2            [26 U.S.C. § 7301 and 28 U.S.C. § 2461(c)]

3       1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States of America

5  will seek forfeiture as part of any sentence, pursuant to Title 26,

6  United States Code, 7301, and Title 28, United States Code, Section

7  2461(c), in the event of the defendant's conviction of the offense

8  set forth in Count Three of this First Superseding Information.

9       2.    The defendant, if so convicted, shall forfeit to the United

10 States of America the following:

11           a.    Any property sold or removed by the defendant in fraud

12 of the internal revenue laws, or with design to avoid payment of such

13 tax, or which was removed, deposited, or concealed, with intent to

14 defraud the United States of such tax or any part thereof;

15           b.    All property manufactured into property of a kind

16 subject to tax for the purpose of selling such taxable property in

17 fraud of the internal revenue laws, or with design to evade the

18 payment of such tax;

19           c.    All property whatsoever, in the place or building, or

20 any yard or enclosure, where the property described in subsection (a)

21 or (b) is found, or which is intended to be used in the making of

22 property described in subsection (a), with intent to defraud the

23 United States of tax or any part thereof, on the property described

24 in subsection (a);

25           d.    All property used as a container for, or which shall

26 have contained, property described in subsection (a) or (b);

27           e.    Any property (including aircraft, vehicles, vessels,

28 or draft animals) used to transport or for the deposit or concealment

of property described in subsection (a) or (b), or any property used to transport or for the deposit or concealment of property which is intended to be used in the making or packaging of property described in subsection (a); and

       f.   To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in this paragraph.

    3.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

///

///

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

E. MARTIN ESTRADA
United States Attorney


LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

CASSIE D. PALMER
Assistant United States Attorney
Chief, Public Corruption and
Civil Rights Section

DANIEL J. O'BRIEN
Assistant United States Attorney
Senior Litigation Counsel
Public Corruption and
Civil Rights Section

J. JAMARI BUXTON
Assistant United States Attorney
Public Corruption and
Civil Rights Section

MAXWELL COLL
Assistant United States Attorney
Cyber and Intellectual Property
Crimes Section