UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No. 24-417 (CKK) |
| | : | |
| HAMZA DOOST, | : | |
| | : | |
| Defendant. | : | |

DEFENDANT HAMZA DOOST'S MOTION TO RECONSIDER
ORDER STAYING JUDGE MCCORMICK'S RELEASE ORDER

Defendant Hamza Doost, through counsel, respectfully moves for reconsideration of this Court's Order staying the release Order issued by Magistrate Judge Douglas McCormick, of the United States District Court for the Central District of California. We also respond here to the government's Emergency Motion For Review of the same Order. Our focus here is on whether tany "condition or combination ofconditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e) (quoted in this Court's Memorandum Opinion and Order of May 14, 2025 (Dkt. No. 61). Our respectful submission is that the answer to that question is in the affirmative, to at least a preponderance of the evidence.

On May 14, 2025, in the Central District of California, United States Magistrate Judge Douglas F. McCormick presided over a contested detention hearing, ultimately ordering Mr. Doost released on strict conditions, including travel, financial, digital currency, and smartphone restrictions designed to ensure his appearance in court and the safety of the community. *In addition* to these conditions, we propose here additional conditions requiring his parents to post the equity in the family residence as security for his bond (at least $600,000 in equity) and to

confine him to his parents' home with electronic monitoring. His parents are prepared to serve as third-party custodians.

We respectfully request a hearing on this motion. If the Court grants our request for a hearing, Mr. Doost's parents will fly to the District of Columbia from northern California to attend it, to testify or otherwise be available for the Court's questioning concerning their adequacy as reliable third-party custodians.

Mr. Doost is a 20-year-old pre-medical student at San Jose State University (attending remotely). He has no prior criminal history – no arrests, charges, or convictions. He has substantial ties to the United States, particularly California, where his parents and three siblings live (in Northern California) and his sister lives (in Irvine, California). He, with his family, has been active for years in his Muslim faith community in California. While he has traveled internationally, he always has returned to the United States, *including, according to our understanding, during the time period when he knew the government was investigating the conduct alleged in the indictment*. Moreover, when federal agents could not locate Mr. Doost on the morning others were arrested, Mr. Doost *voluntarily surrendered* to law enforcement within approximately 90 minutes, delayed only by his attorney's desire to be present to facilitate the surrender. These, we submit, are critically important facts, which we can substantiate at a hearing, should the Court order one. If Mr. Doost were inclined to flee, he never would have behaved in this manner.

<u>The Bail Reform Act</u>

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). To that end, the Bail Reform Act mandates a defendant's release, subject to "the least restrictive further

condition[s]" that will "reasonably assure" the defendant's appearance in court and the safety of the community, should such conditions exist. § 3142(c)(1). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1983), as reprinted in 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention.").

In determining whether detention or pretrial release is appropriate, the following factors are relevant: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). A finding that a defendant poses a risk of flight must be supported by a preponderance of the evidence. *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

<u>Nature and Circumstances of the Charged Offenses</u>

While the superseding indictment in this case charges very serious offenses, the allegations as to Mr. Doost's role in the alleged crimes are different in kind from his codefendants. The criminal enterprise that is the focus of the indictment is alleged to have engaged in the sophisticated theft of digital assets from victims using social engineering, fraud, home invasions, and off-shore virtual currency exchanges. *See generally* First Superseding Indictment ("FSI") at paragraph 33(a)-(g). Mr. Doost, however, is not alleged to have participated in any of this conduct. Instead, he allegedly converted cryptocurrency to cash (referred to in the FSI as fiat currency). *See, e.g., id.* at ¶33(fff) ("In or around September 2024, LAM requested that CORTES and DOOST assist him in exchanging $400,000 in stolen virtual

currency."). The government recognizes this distinction, arguing "While Doost and Mehta's coconspirators were executing social engineering attacks on unwitting victims, stealing hundreds of millions of dollars in cryptocurrency, Doost and Mehta were responsible for laundering the stolen cryptocurrency into fiat cash and wire transfers so that members of the group, largely 18-22 year olds, could live lavish lifestyles filled with millions in fiat cash, private jet travel, Lamborghinis, Mercedez G Wagons, Ferraris, rental mansions in Los Angeles, Miami, and the Hamptons, and nights out at exclusive nightclubs where the group spent upwards of $500,000 per visit and tossed Hermes Birkin bags valued in the tens of thousands of dollars into crowds to draw women's attention." Dkt. No. 62 at 2-3. Mr. Doost (and Mr. Mehta) did not engage in thefts like other alleged coconspirators.

Unlike fraud and home invasion, there is nothing inherently illegal or improper about cryptocurrency conversion itself. While Mr. Doost recognizes that the government alleges he performed these conversion services knowing that the cryptocurrency constituted criminal proceeds, Mr. Doost will dispute that allegation at trial, and it is a question of knowledge and intent, which are difficult to evaluate short of trial.

Much of the remainder of the government's allegations against Mr. Doost – organizing private jets (*id.* at ¶33(y)), arranging for a rental mansion and exotic cars (*id.* at ¶33(bb)), traveling to Miami (*id.* at ¶33(ee)), and arranging travel to the Maldives (*id.* at ¶33(vvv)) – are services Mr. Doost overtly advertised and provided to others through his travel/concierge business which caters to individuals seeking high-end travel and nightclub lifestyle experiences.

These circumstances are not so aggravating as to place him in the limited class of defendants as to whom no conditions of release can be formulated.

Weight of the Evidence

Courts have recognized that the weight of the evidence should be the "least important" statutory consideration under the Bail Reform Act. *See, e.g., United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990) ("The weight of the evidence against the defendant is a factor to be considered but it is 'the least important' of the various factors"); *United States v. Gray*, 651 F. Supp. 432, 436 (W.D. Ark. 1987) ("[T]he court does not believe that . . . any court should presume that every person charged is likely to flee simply because the evidence against him appears to be weighty . . . . Such a presumption would appear to be tantamount to a presumption of guilt, a presumption that our system simply does not allow.")

Mr. Doost has not had the opportunity to review the discovery in this case. The texts cited by the government reflect Mr. Doost's concern over the ostentatious lifestyle of his co-defendants or his efforts to convert cryptocurrency to cash which, as discussed above, is not inherently illicit. Photographs of Mr. Doost on a private jet are not substantial evidence where Mr. Doost is in the business of providing this type of travel to customers of his business. *See id.* at 6.

Mr. Doost's History and Characteristics

The third applicable factor is the defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," 18 U.S.C. § 3142(g)(3)(A); and "whether, at the time of the current offense or arrest, [defendant] was on probation, on parole, or on other release, § 3142(g)(3)(B). These factors weigh in favor of imposing conditions of release.

Mr. Doost is just twenty years old. He was born in 2004 in Tucson, Arizona, where he lived until he was seven or eight years old. In the succeeding twelve years, he lived in Alameda County, in Northern California. Mr. Doost was raised in close-knit, law-abiding family. His parents, both of whom immigrated to the United States from Afghanistan, are hard-working and respected members of their community. Mr. Doost was raised alongside four brothers and sisters, all of whom reside in California (one of whom is expecting the family's first grandchild later this month). His parents and three siblings reside in Northern California and one sister resides in Southern California. He has extended family throughout the United States. Mr. Doost's family is aware of the charges against him and are fully supportive of him. Mr. Doost does not use drugs or alcohol, and has no history of mental illness or mental health concerns.

Mr. Doost is studying microbiology at San Jose State University and hopes to obtain his associate's degree next semester. His ongoing education and his employment weigh in favor of release on appropriate conditions.

Further, the circumstances of Mr. Doost's voluntary surrender to law enforcement are, we submit, a critical factor weighing in favor of release on conditions. On the morning of May 14, 2025, when other defendants were arrested, law enforcement contacted Mr. Doost by telephone to advise him of the pending arrest warrant and to arrange for his surrender. In response, Mr. Doost put agents in touch with his attorney *who coordinated his surrender* at a public parking lot approximately 60 minutes later (delayed only so Mr. Doost's attorney could have breakfast and travel to the meeting location). When law enforcement arrived, Mr. Doost willingly surrendered without incident. This is persuasive evidence that Mr. Doost has no intention to flee.

The government has emphasized Mr. Doost's international travel as grounds to believe he may flee. However, certain of the travel identified by the government (including at the hearing

before Judge McCormick) dates back nearly a decade (Dkt. No. 62 at 15), to when Mr. Doost was a ten-year-old boy traveling abroad with his family. For example, when Mr. Doost visited Turkey in 2018, he was barely a teenager. More importantly, unlike co-conspirators Yarally and Demirtas (*id*. at 15), Mr. Doost always has returned to the United States after traveling internationally, including during the period when he *knew* the government was investigating the very charges he now faces. If Mr. Doost planned to flee, he would not have returned to the United States in March 2025, and he would not have voluntarily surrendered to federal agents last week. These circumstances weigh strongly in favor of release on conditions.

<u>Conditions Can Be Set To Assure Mr. Doost's Appearance in Court</u>

Judge McCormick imposed a strict set of conditions on Mr. Doost to ensure his appearance in Court and the safety of the community. These included:

- a $30,000 appearance bond with an affidavit of surety signed by a close friend, Riley Abels;

- Pretrial Services supervision;

- Travel restricted to the Northen and Central Districts of California and the District of Columbia;

- Surrender passport and obtain no new travel documents;

- Reside and maintain employment as approved by Pretrial Services;

- Avoid all contact with co-defendants;

- Prohibiting upon selling or transferring any asset valued at over $10,000;

- Possess only approved digital devices, email accounts, social media accounts and disclose all passwords and passcodes, with digital devices subject to monitoring by Pretrial Services;

- Prohibition on possessing more than one virtual currency wallet;

- Reside at home with parents;

- Limit of one smartphone only, and may not use Signal, Telegram or any other encrypted messaging application which allows for end-to-end encryption or ephemeral communications;

- Limit to one Gmail account; and

- May not use any virtual private networks (VPNs).

These are comprehensive conditions that are well-calibrated to ensure Mr. Doost's appearance in court and to prevent any danger to the community.

In addition, Mr. Doost's parents are prepared to fully deed the family residence as security for Mr. Doost's bond. The residence, located in Hayward, California, has an estimated value of $1.4 million. The family has no less than $600,000 in equity in the property. Further, the Court could impose comprehensive location monitoring with residency restrictions, such that the Defendant is confined to his home except for religious services, medical appointments, and attorney visits.

Accordingly, it is respectfully submitted that the Court should order Mr. Doost released on appropriate conditions.

>Respectfully submitted,
>
>/s/ Barry Coburn
>
>_____
>Barry Coburn, DC Bar No. 358020
>Coburn, Greenbaum & Eisenstein, PLLC
>1710 Rhode Island Avenue, NW, 2nd Floor
>Washington, DC  20036
>Tel:  202-643-9472
>Email:  barry@coburngreenbaum.com

<u>Certificate of Service</u>

I hereby certify that a copy of this motion will be served upon all counsel of record, this 20th day of May, 2025, using the Court's electronic filing system.

/s/ Barry Coburn
_____