UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

KUNAL MEHTA (6),

Defendant.

Criminal Action No. 24-417-6 (CKK)

**MEMORANDUM OPINION & ORDER**
(June 2, 2025)

On May 13, 2025, Defendant Kunal Mehta was arrested in California on the [50] Superseding Indictment in this case. At a hearing before Magistrate Judge Douglas McCormick of the Central District of California, the Government moved to detain Mehta pending trial. Magistrate Judge McCormick denied the Government's motion and ordered Mehta released subject to conditions. But Magistrate Judge McCormick also stayed that order until 7:00 p.m. Eastern Time on May 14, 2025 to allow the Government to appeal his decision.

On May 14, the Government filed in this Court an [62] Emergency Motion for *De Novo* Review of Magistrate Judge McCormick's Release Order and Request to Stay Release Pending Review. Later that day, applying the four-factor framework articulated in *Nken v. Holder*, 556 U.S. 418 (2009), this Court granted the Government's request for a stay and stayed Judge McCormick's release order pending further order of this Court. Mem. Op. & Order, ECF No. 61. After Mehta secured counsel in this District, the Court set a briefing schedule on the Government's motion for *de novo* review of Magistrate Judge McCormick's release order. *See* Min. Order (May 16, 2025).

Mehta then opposed the Government's motion and requested that the Court vacate its stay of Magistrate Judge McCormick's release order. Def.'s Resp., ECF No. 88. And the

Government filed a reply and further supplement in support of its motion. Govt.'s Reply, ECF No. 94; Gov't's Supp., ECF No. 99. After reviewing the parties' briefing, the Court ordered the Pretrial Services Agency for the Central District of California to conduct further evaluations. Order, ECF No. 100. And the Court has now received the resulting report. *See* Pretrial Compliance Report, ECF No. 128.

For the reasons that follow, the Court shall **GRANT** the Government's request for *de novo* review, **GRANT** the Government's request that Mehta be detained pending trial, **DENY** Mehta's request for reconsideration, **REVOKE** Magistrate Judge McCormick's release order, and **ORDER** that Mehta be detained pending trial.

## I.

The Bail Reform Act provides that if a defendant is ordered released by a magistrate, "the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order." 18 U.S.C. § 3145(a). The U.S. Court of Appeals for the D.C. Circuit has "not squarely decided" the standard of review for such motions. *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021). But every other circuit to address the question has held that the district court's review is *de novo*. *See United States v. Chrestman*, 525 F. Supp. 3d 14, 23 & n.5 (D.D.C. 2021) (BAH) (collecting cases). And this Court has adopted that position. *See United States v. Brown*, No. 23-cr-73, 2023 WL 7017750, at *1 (D.D.C. Oct. 25, 2023) (CKK).

On *de novo* review, the question for the Court is whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). That inquiry is guided by the Bail Reform Act's familiar four-factor test, under which the Court must consider: (1) the nature and

circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).

"To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'"  *Munchel*, 991 F.3d 1273, 1279–80 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)).  Although the statute is silent as to the level of proof required to establish risk of flight, the D.C. Circuit has held that such a finding need only be supported by a "preponderance of the evidence."  *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

## II.

The Government argues Mehta must be detained both because he is a flight risk and because he presents a danger to the community.  Gov't's Mot. at 1.  In the context of evaluating the Government's emergency motion to stay Magistrate Judge McCormick's release order, the Court concluded that the Government was likely to demonstrate by a preponderance of the evidence that Mehta is a flight risk and unlikely to demonstrate by clear and convincing evidence that Mehta is a danger to community.  Mem. Op. & Order, ECF No. 61, at 4.  But the Court noted at the time that its ruling was limited to the record then before it.  *Id.* at 5.

Since then, the Court has received and reviewed additional briefing from both Mehta and the Government.  The Court has also obtained and reviewed the Pretrial Services Agency for the Central District of California's report on Mehta, which was available to Magistrate Judge McCormick, and ordered and reviewed an additional report.

With the benefit of this expanded record, the Court surveys the Section 3142(g) factors.

### A. The Nature of the Charged Offenses

The Court has previously summarized the seriousness of the crimes charged in this case. *See, e.g.*, Mem. Op. & Order, ECF No. 61, at 4; Mem. Op., ECF No. 20, at 5. Because Mehta suggests that the Government has focused "mostly" on his co-conspirators in its briefing, Def.'s Resp. at 1–2, the Court will briefly review the charged conduct again, with greater focus on Mehta's alleged role.

Mehta is charged with participation in a RICO conspiracy and in a conspiracy to launder monetary instruments. *See* Superseding Indictment, ECF No. 50. Both conspiracies are sprawling in scope. Beginning in 2023, the conspirators are alleged to have orchestrated a series of social engineering schemes, frauds, and even a home invasion to steal huge sums of cryptocurrency from unwitting victims across the country. The Government further alleges that the conspirators then used a sophisticated international network to launder the stolen cryptocurrency into fiat currency, with which they made increasingly lavish luxury purchases.

The Government alleges that Mehta joined the conspiracy in early 2024 as a money launderer and fixer. *See* Superseding Indictment at 16. Mehta allegedly arranged for the transfer of stolen cryptocurrency from his coconspirators to Chinese money launderers. *See* Gov't's Mot. at 3. Mehta would then accept transfers of laundered fiat currency from those money launderers through a web of shell companies. *See id.* at 10. These transfers were accompanied by fake descriptions. For example, the Government has proffered that Mehta's bank records show his companies receiving $310,000 in a three-day period for "Family Support." *Id.* For a 10% fee, Mehta would then spend or transfer these laundered funds at the direction of his coconspirators.

Mehta's alleged services varied. Sometimes, he would provide cash. *E.g.*, Superseding Indictment at 20 (alleging that Mehta "personally delivered a duffel bag containing

4

approximately $500,000 in US currency"). Sometimes, he would arrange for wire transfers to his coconspirators and their families. *See e.g.*, Gov't's Mot. at 9 (quoting messages from Mehta describing his plan to wire $550,000 in laundered funds to a coconspirator's mother in increments to avoid detection and taxation). Often, Mehta would use his shell companies to make straw purchases of luxury cars for his coconspirators—apparently believing that if the cars were titled in his companies' names, they could not be seized by law enforcement. *See id.* at 10.

Those allegations alone are serious. Also troubling is the Government's allegation that Mehta assisted his coconspirators "in obtaining firearms for their protection against rival cybercrime groups." Superseding Indictment at 16. The Government proffers that witnesses will testify that Mehta provided firearms to at least three coconspirators, that one coconspirator stated that he purchased an AK47 from Mehta, and that other members of the conspiracy discussed purchasing firearms directly from Mehta. *See* Gov't's Supp. at 1–2. The Government also represents that it has seized firearms from the home of one of those coconspirators, including a handgun bearing a U.S. Marine Corps serial number. *See id.* at 3; ECF No. 97 at 1.

### B. The Weight of the Evidence

The Court has previously discussed the weight of the Government's evidence against Mehta. *See* Mem. Op. & Order, ECF No. 61, at 4. And Mehta "concedes for the purposes of bond determination that the Government has proffered significant evidence." Def.'s Resp. at 5. So it suffices to say for present purposes that the Government's proffered evidence is strong.

### C. Mehta's History and Characteristics

Mehta is a 45-year-old U.S. citizen who has resided in this country for more than 20 years. *See* Def.'s Resp. at 2. He has no criminal record or history of substance abuse. *Id.* And he appears to have community ties in southern California, where he lives with his wife and

where his siblings also reside. *See id.* Mehta's wife is unemployed and is not a U.S. citizen. *See* Pretrial Compliance Report, ECF No. 128.

Mehta also represents that he owns and manages two businesses in southern California. Def.'s Resp. at 2. But the Government suggests those businesses—an IT firm and a firm that manages AirBnB rental properties—are merely "shell companies receiving laundered virtual currency from Chinese nationals." Gov't's Mot. at 20. Mehta reported receiving nearly $100,000 in monthly income from those businesses to Pretrial Services.[1]

The Government also observes that Mehta has an extensive history of international travel, that he has traveled to countries that do not extradite to the United States, and that, at the time of his arrest, Mehta planned to travel to a non-extradition country where two of his coconspirators are presently located. *Id.* at 14–15. But Mehta asserts that some of this travel occurred while he was aware that the Government was investigating him. Def.'s Resp. at 5. And Mehta returned to the United States on those occasions despite having the opportunity to flee. *Id.*

The Government seized nearly $300,000 in cash from Mehta's residence. Reply at 2. And the Government alleges that Mehta has access to other stores of cash throughout Los Angeles and through bank accounts controlled by his web of LLCs. *Id.* (The Government is in the process of tracing and unwinding the latter source of funds. *Id.*).

Finally, Mehta owns and is licensed to concealed carry firearms. According to Pretrial Services, Mehta gave conflicting reports as to the number of firearms he owns. He disclosed one firearm to arresting officers but told Pretrial Services he owns two to three. Pretrial Services reports that Mehta is the registered owner of five firearms (three handguns, a shotgun, and a

---

[1] Mehta's Pretrial Services Report states that he receives between $70,000 and $80,000 per month from his AirBnB business alone, a figure verified by his wife. Mehta's briefing before this Court drops a zero from those figures and reports income of between $7,000 and $8,000 per month. Def.'s Resp. at 2. But the larger, verified figures are more consistent with Mehta's monthly expenses ($13,900 per month in rent).

rifle). Pretrial Services also reports that only three firearms were recovered from his home. The Government reports that it seized "three firearms and a shotgun" from Mehta. Gov't's Supp. at 2. So at least one of Mehta's firearms remains unaccounted for.

### D. Danger to the Community

The Government asserts that Mehta is a danger to the community based on his possession of firearms and based on the allegations in the indictment that he procured firearms for other members of the charged conspiracy. Gov't's Mot. at 20. But Mehta has no criminal history. And the Superseding Indictment does not accuse him of any violent crimes.

### III.

Having reviewed the record before it through the lens of the Section 3142(g) factors, the Court now weighs the factors and considers Mehta's proposed conditions of release.

### A. Weighing the Factors

On balance, Mehta presents a flight risk in the absence of restrictive conditions of release or pretrial confinement. He faces serious charges with lengthy potential penalties, and the Government has proffered the existence of substantial documentary evidence and witness testimony against him. In short, Mehta has a significant incentive to flee.

Further, Mehta appears to have the means to facilitate flight from these proceedings. He has an extensive history of international travel. He has ties to coconspirators presently residing in non-extradition countries. And he has ready access to large sums of cash—as evidenced by the $300,000 found in his home. Although the Government has seized that cash and is in the process of winding up some of Mehta's holding companies, the Government asserts that Mehta likely continues to have access to other stores of money. Given the prevalence of cryptocurrency in the alleged conspiracy and the Court's experience with some of Mehta's codefendants, the Court credits the Government's allegation at this early stage.

Mehta's community ties, including his wife's presence in California, weigh against a finding that he presents a flight risk. But Mehta's wife is not a U.S. citizen. And she is unemployed. Given Mehta's evident financial means, Mehta could relocate both himself and his spouse to a non-extradition country and prevent his participation in these proceedings.

By contrast, the Court cannot conclude at this stage that Mehta presents a clear danger to the community. Mehta has no criminal history. The Government has not alleged he engaged in any violent conduct. And Mehta was licensed to own and carry the firearms seized from his home. The Government's allegations that Mehta facilitated his coconspirators' purchases of firearms are troubling. But the Government has not alleged with specificity, or presented clear evidence, that Mehta did so illegally. The Government's descriptions of Mehta's role in procuring firearms are as consistent with him pointing his coconspirators to a reputable dealer as they are with Mehta engaging in unlawful straw purchases. At this stage, that ambiguity cuts in Mehta's favor. The Government bears the burden of providing clear and convincing evidence of Mehta's dangerousness. But on the present record, the evidence is in equipoise.

### B. Conditions of Release

The Court's task is thus to determine, by a preponderance of the evidence, whether any combination of conditions of release can manage Mehta's risk of flight and ensure his appearance in these proceedings. *See* 18 U.S.C. § 3142(g).

Magistrate Judge McCormick ordered Mehta released subject, in relevant part, to the conditions that he:

- Surrender his passport;

- Report to Pretrial Services in the Central District of California;

- Reside in a home approved by Pretrial Services and remain in the Central District of California except as approved by Pretrial Services or the Court;

8

- Possess only those digital devices and online accounts approved by Pretrial Services, subject those devices and accounts to monitoring by Pretrial Services, refrain from using a VPN, and refrain from contacting alleged coconspirators; and

- Possess only one cryptocurrency wallet, refrain from transfers of assets valued at $10,000 or more without permission, and submit to searches to verify compliance.

*See* Pretrial Compliance Report, ECF No. 128.

After this Court stayed Magistrate Judge McCormick's release order, Mehta proposed two additional conditions. First, that his brother act as a surety and post a surety bond with roughly $1.1 million in equity in two residential properties. Second, that Mehta submit to home incarceration and location monitoring. *See* Def.'s Resp. at 6.

The Court directed Pretrial Services to assess the suitability of Mehta's home for home incarceration and to assess the availability of an appropriate third-party custodian. Order, ECF No. 100. Pretrial Services reported that Mehta's wife has relocated to his brother's home and that Mehta would reside with wife, brother, and sister-in-law in his brother's home if released. *See* Pretrial Compliance Report, ECF No. 128. Because Mehta's wife is not a U.S. citizen, she cannot serve as a third-party custodian. *Id.* Mehta's brother is eligible to serve in that role. *Id.* Pretrial Services reported that Mehta's brother's home is suitable for home incarceration. *Id.* But Pretrial Services deferred to the Court because Mehta's brother is away from the home working in-office roughly 50% of the time. *Id.*

On the present record, the Court concludes by a preponderance of the evidence that no condition or combination of conditions of release can ensure that Mehta will not flee these proceedings. Ordinarily, a defendant's willingness to post a substantial surety bond would weigh heavily against detention. But the Government has persuaded the Court that Mehta's demonstrated ability to clandestinely access massive amounts of illicit cryptocurrency and fiat cash diminish the coercive force of any bond. Mehta had $300,000 in cash in his home when he

9

was arrested.  The Government has proffered the existence of documentary evidence showing Mehta moving cash in $500,000 increments.  And Mehta is credibly alleged to have participated in the digital laundering of millions of dollars as a matter of course.  On the present record, Mehta will likely retain the ability to access more than enough money to repay any lost bond with ease.

Further, the Court is not persuaded that home incarceration and location monitoring can prevent Mehta's flight.  Although Mehta's brother is eligible to serve as a third-party custodian, Pretrial Services deferred judgment to the Court on Mehta's suitability for home incarceration because his brother is frequently away from the home.  Releasing Mehta would realistically mean releasing him to the supervision of his wife.  But Mehta's wife is not a citizen, she is unemployed, and the couple have no children.  In short, Mehta and his wife could both flee the United States.

Finally, the Court notes that Mehta is unique among his many codefendants in critical respects.  He has an extensive history of international travel and connections abroad.  He is more than 20 years older than every other defendant in this case.  And, unlike his codefendants, his release would not result in his residing in his parents' home in an environment completely different than where he allegedly committed his crimes.  Instead, Mehta would be in virtually identical circumstances, living with his wife and working from home on two businesses the Government alleges were integrated into his money-laundering scheme.

In sum, Mehta has incentive to flee; Mehta has connections abroad; Mehta and his wife lack sufficiently strong ties to the community; Mehta has access to enough money to mute the coercive force of bond; and Mehta cannot be reliably supervised by an eligible third-party custodian if released on home incarceration.

## IV. CONCLUSION & ORDER

For the foregoing reasons, and on the present record, it is hereby:

**ORDERED** that the Government's Request for *De Novo* Review is **GRANTED**;

**ORDERED**, upon *de novo* review, that the Government's request that Mehta be detained pending trial is **GRANTED** pursuant to 18 U.S.C. § 3142(f)(2)(A);

**ORDERED** that Mehta's Motion for Reconsideration is **DENIED**;

**ORDERED** that the order of release issued by Magistrate Judge McCormick and previously stayed by this Court is **REVOKED**; and further

**ORDERED** that Mehta remain in custody pending trial and be transferred to this District for further proceedings.

**SO ORDERED.**

Dated: June 2, 2025

/s/ Colleen Kollar-Kotelly
COLLEEN KOLLAR-KOTELLY
United States District Judge