UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.  : | Case No. 24-cr-417 (CKK) |
| : | |
| : | |
| KUNAL MEHTA, also known as "Papa," : | |
| "The Accountant," "Shrek," and "Neil," : | |
| Defendant.   : | |

## GOVERNMENT'S SUPPLEMENTAL REPLY TO DEFENDANT'S OPPOSITION TO DETENTION

The United States objects to Defendant's request to reopen the detention hearing. Title 18, United States Code, Section 3142(f)(2) permits the Court to reopen a detention hearing if the movant offers information "that *was not known* to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." *United States v. Krol*, 642 F. Supp. 3d 28, 44 (D.D.C. 2022).

The standard is two-pronged. The Court must first decide whether the information was "not known" at the time of the hearing and then move on to the materiality analysis. Defendant cannot satisfy either prong. Defendant submits that his brother now has approval to telework full-time under his terms of employment. In the prior PSR submitted on May 30, 2025, Defendant's brother stated that "[h]is work allows him to work 50% remotely and 50% from an office located just one mile from the residence." ECF Doc. 128. The Court issued its ruling on June 2, 2025. ECF Doc. 144. In Defendant's Motion to Reopen, he now submits that his brother can work 100% from home. ECF Doc. 144. This is not information *unknown* at the time of the hearing, this is simply a new argument by the Defendant after the Court issued its order. Defendant made no mention of his brother serving as a 3rd party custodian in his filings. ECF Doc. 88. Presenting new arguments

or new evidence alone is not enough to reopen a detention hearing. *See United States v. Hare*, 873 F.2d 793 (5th Cir. 1989) (Defendant denied reopening of hearing to submit evidence that he always appeared in prior prosecutions and was an exemplary employee), *see also United States v. Dillon*, 938 F.2d 1412 (1st Cir. 1991) (Defendant denied reopening of detention hearing to submit character affidavits and to consider offer to post a family home as surety. Defendant had sufficient time to obtain the affidavits and letters, or to arrange for the personal appearance of any witnesses).

Similar to *Dillon*, Defendant had ample time to propose his brother as a third-party custodian and did not do so. It was not until the Court issued its ruling that Defendant submitted this proposal. If the Court were to reopen for these types of new arguments, we would enter a weekly cycle of motions and counter motions with new proposals. This is why § 3142(f)(2) requires that the information be unknown at the time of the hearing, not that it simply be a new or tweaked argument.

If the Court reopens the hearing through pleading to consider the evidence, it should still deny the relief sought by Defendant. Defendant's brother offers his family homes as surety, which is admirable. Defendant's brother's properties are valuable and replacing them would be time consuming but it would barely put a dent in Defendant's finances. Defendant was part of an enterprise that held hundreds of millions in stolen cryptocurrency. He performed cash deliveries in grocery bags to the tune of $500,000 at a time and turned stolen cryptocurrency into clean banking wires to purchase million-dollar cars on short notice. In just one example, shortly before Co-conspirator Serrano's arrest at LAX, he sent Defendant over $550,000 in stolen cryptocurrency to launder and send to his mother. Serrano was arrested hours later and Defendant simply kept this money.

Defendant argues that the Government has not affirmatively proven that he continues to have access to funds. Simply put, that is because the Defendant is a savvy money launderer. Defendant's JP Morgan Chase bank accounts were closed earlier this year, without any government action, for suspicion of money laundering. In recent months, Defendant has asked other individuals to open bank accounts on his behalf, in their names, and to give Defendant the login information so Defendant can continue his operation.

Defendant's finances remain a mystery to the Court and the parties. In his PSR in CDCA, Defendant said he didn't know how much money he had in the bank. He also claimed to earn $70,000 - $80,000 per month from running AirBnB properties and an additional $100,000 - $120,00 from an IT company. Defendant's wife verified this information at the time. This would total between $940,000 - $1,080,000 per year. While this information was only "verified" by his wife without any documentation and is still extremely suspect, it would at least support his lifestyle.

His most recent filing through counsel states that he earns $7,000 - $8,000 per month with AirBnB. ECF Doc. 88.[1] Defendant still submits that he owns a yet to be identified IT company that generates $100,000 - $120,000 per year since 2006. Again, none of this has been verified with documents. This salary, even assuming the IT company exists, would result in a $184,000 - $216,000 yearly income before taxes. His base level living expenses provided in his CDCA PSR for rent, groceries, utilities, and cell phone place his yearly expenses at $186,000. This is to say nothing of the exotic cars located in his driveway and $300,000 in his closet. The numbers simply don't add up and raise even more doubt about his finances and what he actually does for a living.

---

[1] Defense counsel informed the government that the information they have is that Defendant earned $7,000 - $8,000 per month from AirBnB and not the previously "verified" amount by Defendant's wife of $70,000 - $80,000 per month.

3

Defendant's online presence includes a February 2021 interview with the Los Angeles Tribune where he portrays himself as a clothing designer and makes no mention of a successful IT company. Ex. 1. His presence on Instagram appears to be that of an influencer, posing with expensive cars and posting photos of bags of cash and a passport, discussing international travel.




4

 

Defendant has also created a convoluted web of companies. He is either listed as the registered agent, organizer, or the residential location for at least the following California entities: 1) CodeNinja LLC, 2) The KDKM, 3) Motivational Rentals LLC, 4) Digital Core Systems, 5) KG International Inc., 6) Milimani LLC, and 7) Hara Properties LLC.

Defendant laundered millions of dollars in stolen cryptocurrency for members of the enterprise through these and other companies. Well before the arrest, JP Morgan closed defendant's bank accounts for suspicion of money laundering, independent of any government action. He has declined to identify how much money he has in the bank, or even what bank he does business with for his living expenses and business dealings. Unless Defendant is willing to identify all his bank accounts and cryptocurrency wallets, there is no other conclusion that can be arrived upon but that he continues to maintain access to large sums of money and bulk cash connections. These facts, coupled with his strong international ties and lack of community ties, support his continued pre-trial detention.

        Respectfully submitted,

        Jeanine Ferris Pirro
        United States Attorney

BY:   */s/ Kevin L. Rosenberg*
        Kevin Rosenberg
        Ohio Bar 0081448
        Assistant United States Attorney
        U.S. Attorney's Office for the District of Columbia
        601 D Street, N.W.
        Washington, D.C. 20530
        (202) 809-5351
        Kevin.Rosenberg@usdoj.gov