UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : No. 24-CR-417 (CKK) |
| JOEL CORTES, | : |
| Defendant. | : |

## STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

### I.   Summary of the Plea Agreement

As set forth in the attached plea agreement, Defendant Joel Cortes (hereinafter referred to as "Defendant" or "Cortes") agrees to accept responsibility and plead guilty to Count One of the Indictment, charging Defendant with RICO Conspiracy, in violation of Title 18, United States Code, Section 1962(d).

### II.   Elements of the Offenses

Count One, RICO Conspiracy

The essential elements of the offense of RICO Conspiracy, in violation of Title 18, United States Code, Section 1962(d), each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

1. That the defendant knowingly agreed to conduct or participate, directly or indirectly, in the conduct of the affairs of the charged enterprise through a pattern of racketeering activity.

2. That an enterprise would be established as alleged in the indictment;

3. That the enterprise would be engaged in, or its activities would affect, interstate or foreign commerce.

4. That the defendant would be employed by, or associated with, the enterprise.

## II.     Statement of Facts

Pursuant to Federal Rule of Criminal Procedure 11, the United States and the Defendant, with the concurrence of Defendant's attorney, stipulate and agree that the following facts are true and accurate. The following statement of facts does not purport to include all of the Defendant's illegal conduct. It also does not purport to be an inclusive recitation of everything that the Defendant heard, knew, or witnessed concerning the illegal activities committed by Defendant and others. It is intended to represent sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea.

### The Social Engineering Enterprise

The Social Engineering Enterprise ("SE Enterprise") was made up of a group of individuals based in California, Connecticut, New York, Florida, and abroad. The SE Enterprise began on a date unknown but by no later than October of 2023 and continued through at least on in or around March 2025. Members and associates of the SE enterprise served different roles and held different responsibilities. The roles included database hackers, organizers, target identifiers, callers, money launderers, and residential burglars targeting hardware virtual currency wallets. Cortes was a money launderer with the SE Enterprise. The purposes of the SE Enterprise included, but were not limited to, stealing virtual currency from victims throughout the United States through fraudulent pretenses; disguising, concealing, and obfuscating the source and ownership of the stolen funds through the use of virtual currency laundering techniques; and converting laundered virtual currency into fiat currency and wire transfers for use at nightclubs, for the purchase of exotic cars, jewelry, luxury handbags, clothing, private jet rentals, and rental mansions in Los Angeles, the Hamptons, and Miami.

2

Members and associates of the SE Enterprise used stolen virtual currency to purchase, among other things, (1) nightclub services ranging up to $500,000 per evening, (2) luxury handbags valued in the tens of thousands of dollars which were given away at nightclub parties, (3) luxury watches valued between $100,000 up to over $500,000, (4) luxury clothing valued in the tens of thousands of dollars, (5) rental homes in Los Angeles, the Hamptons, and Miami, (6) private jet rentals for travel, (7) a team of private security guards, and (8) a fleet of exotic cars, ranging in value from $100,000 up to $3,800,000.

Cortes was introduced to the SE Enterprise by Money Exchanger-1 and John Tucker Desmond, also known as Tucker Desmond in or around March 2024. Cortes agreed to assist Money Exchanger-1 in retrieving and delivering bulk cash to members of the SE Enterprise throughout the Los Angeles. These retrievals were not done from banking institutions, but rather from discrete residential addresses throughout Los Angeles where Cortes would receive funds in envelopes or grocery bags.

Initially the retrievals and deliveries were valued at around $5,000 - $10,000 and grew quickly to around $30,000 at a time. Cortes did not ask about the purpose of the retrievals and deliveries during the initial period.

During this time, Cortes delivered bulk cash to SE Enterprise members Malone Lam, Conor Flansburg, Jeandiel Serrano, and others. Cortes received payment for his services and gained more trust among the members and associates of the SE Enterprise. Cortes eventually began going out to nightclubs with the SE Enterprise where they would spend hundreds of thousands of dollars per evening.

Cortes also soon began traveling with Money Exchanger-1 to retrieve $100,000 to

$300,000 at a time for members of the SE Enterprise. Cortes also traveled with Evan Tangeman and Tucker Desmond to make large cash retrievals and deliveries.

Cortes purchased luxury goods at the direction of Money Exchanger-1 and shipped them to Co-Conspirator-1. He also shipped goods to Ethan Yarally. In or around July 2024, Cortes began spending more time with the SE Enterprise at a residence Malone Lam was renting on Clear Valley Road in Encino, California. Cortes knew that Evan Tangeman was procuring multi-million-dollar rental homes throughout Los Angeles for the SE Enterprise using stolen cryptocurrency, changed into fiat cash for payment and using fake ID documents to execute the leases, all to conceal the true identity of the SE Enterprise members and conceal the origin of the funds.

In or around July 2024, Cortes began working with Kunal Mehta to perform cash exchanges and money laundering services for members and associates of the SE Enterprise. Cortes was introduced to Mehta through Money Exchanger-1 and Conor Flansburg. Mehta referred to himself as a "washing machine," which Cortes understood to be a money launderer. Mehta explained to Cortes that the members of the SE Enterprise were "com" kids, stealing cryptocurrency through social engineering schemes and Mehta and Cortes were changing it into cash for a fee, so the group could spend it on luxury rentals, nightclub services, exotic cars and travel. In one transaction, Cortes traveled with Mehta to retrieve $1,000,000.00 in fiat cash and delivered it personally to Malone Lam.

In his role working closely with Mehta, Cortes assisted with purchasing designer cloths, renting exotic cars, shipping clothes, and shipping bulk cash to members of the SE Enterprise.

Cortes also shipped cash across the country at Mehta's direction. Money Exchanger-1

4

showed Cortes how to open stuffed animals, take out the stuffing, hide up to $20,000 inside, and reseal the stuffed animals for shipping. Cortes would receive delivery addresses from Mehta and ship the cash at Mehta's direction.

In or around August 19, 2024, Cortes traveled to Malone Lam's Mandalay Drive rental house with Flansburg and others. Malone Lam, Marlon Ferro, Co-Conspirator-2, Flansburg, and others went into Lam's room to celebrate the $248,000,000 virtual currency theft from Victim-7 and discuss all of the items and cars they intended to buy with the stolen cryptocurrency.

Lam used Mehta to purchase cars and find straw-signers who would place their names on car titles for cars purchased with Lam's laundered funds, all to assist members of the SE Enterprise in concealing and disguising the true owners of the automobiles and concealing and disguising the source of the funds used to purchase the automobiles. Mehta found the signers and paid them between $10,000 - $15,000 per car.  Cortes knows this because he was in a group chat with Mehta, Lam, and others and saw the requests come through from Lam.

Cortes knew that Lam purchased around seven exotic automobiles through Mehta immediately after the August 19, 2024 theft, all estimated around $700,000 each. At one point following the theft, Lam purchased a fleet of vehicles for members of the SE Enterprise with stolen cryptocurrency and gifted Cortes a BMW.

In September 2024, Cortes and other SE Enterprise members traveled private jets paid for by Malone Lam with stolen cryptocurrency from Los Angeles to Miami. In Miami, Cortes lived in one of the rental mansions rented by Lam with stolen cryptocurrency. While in Miami, members of the SE Enterprise, to include Cortes, Malone Lam, Marlon Ferro, Tucker Desmond, Evan Tangeman, Ethan Yarally, Cody Demirtas, and others used the SE Enterprise's stolen

5

cryptocurrency for nightclub and entertainment services throughout Miami. They changed their stolen cryptocurrency into fiat cash through Hamza Doost so they could spend it at nightclubs, at times incurring bills of $200,000 to $300,000 or more per evening.

Shortly before Malone Lam's arrest on September 18, 2024, Cortes had returned to Los Angeles. Immediately following Lam's arrest, Evan Tangeman contacted Cortes and asked him to travel to Lam's residences in Los Angeles, retrieve electronic devices, and destroy them. Cortes refused the request and Tangeman instead had John Tucker Desmond perform this task and destroy the electronic devices on behalf of the SE Enterprise. Desmond also packed Malone Lam's designer clothing from inside of the rental homes and members of the SE Enterprise have been selling off items of clothing to fund their personal expenses and fund Lam's criminal defense attorneys, among other things.

Cortes continued to work with members of the SE Enterprise following Lam's arrest. Kunal Mehta requested Cortes' personally identifiable information so that Mehta could create an LLC shell company in Cortes' name that could be used for money laundering. Cortes provided the information and Mehta opened the company "Precision Timepieces LLC," in Cortes' name. Cortes then opened bank accounts in the company's name at Mehta's direction and provided Mehta with the login information for the accounts. Cortes would regularly receive directions from Mehta to effectuate wire transfers to accounts provided by Mehta. As part of the agreement, Cortes was allowed to pay his personal bills with money in the account.

During this time, Mehta instructed Cortes to clear his telegram chats and incriminating messages because they needed to be careful.

In or around March 2025, Cortes traveled abroad with SE Enterprise members Hamza

Doost, Cody Demirtas, and Ethan Yarally. The group traveled to Thailand and Dubai using stolen cryptocurrency laundered through Hamza Doost.

As a member of the SE Enterprise, Cortes knew that he was engaging in financial transactions that represented the proceeds of unlawful activity, that being the social engineering cryptocurrency thefts being executed by Malone Lam and others. He also knew that these transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity. As part of the SE Enterprise, Cortes engaged in over $9,500,000 in money laundering financial transactions.

        Respectfully Submitted

        JEANINE PIRRO
        United States Attorney

By:

        Kevin Rosenberg
        Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I have read the Statement of Offense setting forth the facts related to my guilty plea. I have discussed this proffer fully with my attorney, G. Allen Dale, Esq. I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: June 30, 2025            Joel Collazo-Cortes
                                _____
                                Joel Cortes

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting the Government's proffer of evidence related to my client's guilty plea. I have reviewed the entire proffer with my client and have discussed it with him fully. I concur in my client's agreement with and acceptance of this proffer.

Date: 6/30/25                  _____
                                G. Allen Dale, Esq.
                                Counsel for Defendant

8