UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : No. 24-CR-417 (CKK) |
| KUNAL MEHTA, | : |
| Defendant. | : |

## STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

### I. Summary of the Plea Agreement

As set forth in the attached plea agreement, Defendant Kunal Mehta (hereinafter referred to as "Defendant" or "Mehta") agrees to accept responsibility and plead guilty to Count One of the Indictment, charging Defendant with RICO Conspiracy, in violation of Title 18, United States Code, Section 1962(d).

### II. Elements of the Offenses

#### Count One, RICO Conspiracy

The essential elements of the offense of RICO Conspiracy, in violation of Title 18, United States Code, Section 1962(d), each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

1. That the defendant knowingly agreed to conduct or participate, directly or indirectly, in the conduct of the affairs of the charged enterprise through a pattern of racketeering activity.

2. That an enterprise would be established as alleged in the indictment;

3. That the enterprise would be engaged in, or its activities would affect, interstate or foreign commerce.

4. That the defendant would be employed by, or associated with, the enterprise.

## II. Statement of Facts

Pursuant to Federal Rule of Criminal Procedure 11, the United States and the Defendant, with the concurrence of Defendant's attorney, stipulate and agree that the following facts are true and accurate. The following statement of facts does not purport to include all of the Defendant's illegal conduct. It also does not purport to be an inclusive recitation of everything that the Defendant heard, knew, or witnessed concerning the illegal activities committed by Defendant and others. It is intended to represent sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea.

### The Social Engineering Enterprise

The Social Engineering Enterprise ("SE Enterprise") was made up of a group of individuals based in California, Connecticut, New York, Florida, and abroad. The SE Enterprise began on a date unknown but by no later than October of 2023 and continued through at least in or around May 2025. Members and associates of the SE enterprise served different roles and held different responsibilities. The roles included database hackers, organizers, target identifiers, callers, money launderers, and residential burglars targeting hardware virtual currency wallets. Mehta was a money launderer with the SE Enterprise. The purposes of the SE Enterprise included, but were not limited to, stealing virtual currency from victims throughout the United States through fraudulent pretenses; disguising, concealing, and obfuscating the source and ownership of the stolen funds through the use of virtual currency laundering techniques; and converting laundered virtual currency into fiat currency and wire transfers for use at nightclubs, for the purchase of exotic cars, jewelry, luxury handbags, clothing, private jet rentals, and rental

mansions in Los Angeles, the Hamptons, and Miami. Mehta's role was primarily to convert cryptocurrency to cash, convert cryptocurrency to bank wires, and to facilitate the purchase of exotic cars through Exotic Car Dealership 1.

Members and associates of the SE Enterprise used stolen virtual currency to purchase, among other things, (1) nightclub services ranging up to $500,000 per evening, (2) luxury handbags valued in the tens of thousands of dollars which were given away at nightclub parties, (3) luxury watches valued between $100,000 up to over $500,000, (4) luxury clothing valued in the tens of thousands of dollars, (5) rental homes in Los Angeles, the Hamptons, and Miami, (6) private jet rentals for travel, (7) a team of private security guards, and (8) a fleet of exotic cars, ranging in value from $100,000 up to $3,800,000.

Mehta first met the members of the SE Enterprise in early 2024 through Money Exchanger 1 who was friendly with the owner of Exotic Car Dealership 1. Mehta was introduced as someone who could help Money Exchanger 1 obtain large amounts of fiat cash.

Money Exchanger 1 soon began soliciting Mehta's assistance with crypto-to-cash conversions in the tens of thousands of dollars. Mehta charged a 10% fee for converting the cryptocurrency to fiat cash.

Mehta worked with Money Exchanger-1, Joel Cortes ("Cortes"), Hamza Doost ("Doost"), and others to provide money laundering services to the social engineers in the SE Enterprise. The money launderers came to an agreement to share the profits of the cryptocurrency exchanges as to not compete against each other.

Mehta created multiple shell companies in 2024 for the purpose of laundering funds through bank accounts created to give the appearance of legitimacy. Mehta created shell

3

companies named Digital Core Solutions, Motivational Rentals, and Code Ninja, and opened bank accounts in the names of these entities. Prior to 2024, Mehta had previously created The KDKM LLC for business purposes and held bank accounts under this company name as well. To facilitate the crypto-to-wire money laundering services, Mehta received stolen cryptocurrency from members of the SE Enterprise which they had already laundered. Mehta would then transfer the cryptocurrency to additional associates who would further launder it through sophisticated blockchain laundering techniques, and it was then returned to Mehta's shell company bank accounts through incoming wire transfers from additional shell companies organized by others throughout the United States. These incoming wire transfers were often in the hundreds of thousands of dollars and were disguised to appear legitimate with payment descriptions such as "family support," or "IT services." In fact, these were stolen funds being laundered on the blockchain and through the US financial system.

If members of the SE Enterprise requested fiat cash, Mehta would either (1) transfer cryptocurrency to associates who would then send him to locations throughout the Los Angeles area where he could receive bulk cash exchanges, or (2) he would make large cash withdrawals directly from his bank accounts. Mehta would then deliver the cash himself or have one of his associates deliver the cash. If members of the SE Enterprise needed funds transferred through wire, Mehta would perform the wire transfers for them and transfer the funds to the intended recipient, sometimes an exotic car dealership, private jet company, or real estate rental company. Mehta charged a 10% fee for these services.

Mehta also mailed fiat cash with Cortes and others for members of the SE Enterprise. Mehta would receive the cryptocurrency in the same manner, convert it to fiat cash, and cause

4

associates to discretely pack the cash hidden in stuffed animals or other items and ship it throughout the country.

Mehta also used his shell companies to facilitate exotic car purchases for members of the SE Enterprise. Members of the SE Enterprise, predominately 18-, 19-, and 20-year-old young men, did not want Lamborghinis, Rolls Royce, Porsches, Ferraris and the like held in their true names because it would bring unwanted attention to their unexplained wealth as unemployed young men. Mehta agreed to title the vehicles in the names of his shell companies to help disguise the true owners of the automobiles. At times, Mehta would also seek out straw signers who would place their names on the automobile title and purchase documents in exchange for payments from Mehta. These payments exceeded $10,000 per signing. Mehta would in turn typically charge a 10% fee for this service.

Mehta and Doost helped Co Conspirator-1 organize a large trip in the spring of 2024 where Co Conspirator-1 used stolen cryptocurrency to rent two mansions in the Hamptons along with approximately 10 exotic cars and purchase commercial air travel for at least ten individuals from Los Angeles to the Hamptons and private air travel for an additional six. The travelers included Mehta, Money Exchanger-1, Cortes, Exotic Car Dealership Owner-1, and others. Mehta assisted Doost in arranging this event by converting stolen cryptocurrency to bank wire and wiring funds from Mehta's shell company bank accounts to various businesses in the Hamptons to pay for car rentals, house rentals, and entertainment for Co Conspirator-1 and the members of the SE Enterprise.

During the summer of 2024, Lam and others (not including Mehta) executed a cryptocurrency theft of well over $10,000,000. Mehta assisted Lam in exchanging a portion of

5

the stolen money into fiat cash and personally delivered over $500,000 in cash to Lam and his associates at their LA home.

In or around August or September of 2024, Mehta assisted Lam in securing large portions of approximately $3,000,000 in cash for a Los Angeles rental home. Lam used Evan Tangeman ("Tangeman") and Money Exchanger 1 to exchange stolen cryptocurrency to fiat cash for a rental deposit. Tangeman and Money Exchange 1 received the cryptocurrency and used Mehta and others to obtain fiat cash for Lam.

In or around September 17, 2024, Mehta offered to help launder $500,000 in stolen cryptocurrency from Co Conspirator 2 to pay Co Conspirator 2's mother. Mehta offered to pay the mother in wire transfers in a way that made her appear to be an employee of one of Mehta's shell companies. Co Conspirator 2 in turn transferred approximately $550,000 in stolen cryptocurrency to Mehta. Co Conspirator 2 was arrested at Los Angeles International Airport shortly after this transfer and Mehta kept the cryptocurrency.

In or around the end of 2024, various financial institutions closed Mehta's bank accounts pursuant to their own anti-money laundering protocols. Mehta in turn caused Cortes to open bank accounts in the name of another shell company, Precision Timepieces LLC, which Mehta and Cortes continued to use in part for money laundering purposes.

By at least in or around April/May 2024, Mehta learned that the members of the SE Enterprise were stealing cryptocurrency through social engineering fraud schemes. At one time during the conspiracy, Mehta recruited one individual to work as a social engineer caller for the SE Enterprise.

As a member of the SE Enterprise, Mehta agreed that members of the SE Enterprise

6

would commit at least two racketeering acts as defined by Title 18, United States Code, Section 1961. Mehta knew that he was engaging in financial transactions in excess of $10,000 which represented the proceeds of unlawful activity, that being the social engineering cryptocurrency thefts being executed by members of the SE Enterprise, to include Lam, Co Conspirator 1, Co Conspirator 2, Yarally, Demirtas, Flansburg, Ferro, and others. He knew that he was changing the cryptocurrency into fiat cash and wire transfers for the SE Enterprise members to disguise the nature, location, source, ownership, and control of the stolen cryptocurrency. Mehta also agrees that it was reasonably foreseeable to him that at least $25,000,000 would be laundered by the SE Enterprise during the existence of the conspiracy.

        Respectfully Submitted

        JEANINE PIRRO
        United States Attorney

By: *Kevin L. Rosenberg*
     Kevin Rosenberg
     Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I have read the Statement of Offense setting forth the facts related to my guilty plea. I have discussed this proffer fully with my attorney, Addy Schmitt, Esq. I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 11/17/2025

Kunal Mehta

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting the Government's proffer of evidence related to my client's guilty plea. I have reviewed the entire proffer with my client and have discussed it with him fully. I concur in my client's agreement with and acceptance of this proffer.

Date: 11/17/25

Addy Schmitt, Esq.
Counsel for Defendant

8