UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : No. 24-CR-417 (CKK) |
| EVAN TANGEMAN, | : |
| Defendant. | : |

## STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

### I.   Summary of the Plea Agreement

As set forth in the attached plea agreement, Defendant Evan Tangeman (hereinafter referred to as "Defendant" or "Tangeman") agrees to accept responsibility and plead guilty to Count One of the Indictment, charging Defendant with RICO Conspiracy, in violation of Title 18, United States Code, Section 1962(d).

### II.   Elements of the Offenses

#### Count One, RICO Conspiracy

The essential elements of the offense of RICO Conspiracy, in violation of Title 18, United States Code, Section 1962(d), each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

1. That the defendant knowingly agreed to conduct or participate, directly or indirectly, in the conduct of the affairs of the charged enterprise through a pattern of racketeering activity.

2. That an enterprise would be established as alleged in the indictment;

3. That the enterprise would be engaged in, or its activities would affect, interstate or foreign commerce.

4. That the defendant would be employed by, or associated with, the enterprise.

## II.   Statement of Facts

Pursuant to Federal Rule of Criminal Procedure 11, the United States and the Defendant, with the concurrence of Defendant's attorney, stipulate and agree that the following facts are true and accurate. The following statement of facts does not purport to include all of the Defendant's illegal conduct. It also does not purport to be an inclusive recitation of everything that the Defendant heard, knew, or witnessed concerning the illegal activities committed by Defendant and others. It is intended to represent sufficient information for the Court to find a factual basis for accepting the Defendant's guilty plea.

### The Social Engineering Enterprise

The Social Engineering Enterprise ("SE Enterprise") was made up of a group of individuals based in California, Connecticut, New York, Florida, and abroad. The SE Enterprise began on a date unknown but by no later than October of 2023 and continued through at least in or around March 2025. Members and associates of the SE enterprise served different roles and held different responsibilities. The roles included database hackers, organizers, target identifiers, callers, money launderers, and residential burglars targeting hardware virtual currency wallets. Tangmenan was a money launderer with the SE Enterprise. The purposes of the SE Enterprise included, but were not limited to, stealing virtual currency from victims throughout the United States through fraudulent pretenses; disguising, concealing, and obfuscating the source and ownership of the stolen funds through the use of virtual currency laundering techniques; and converting laundered virtual currency into fiat currency and wire transfers for use at nightclubs, for the purchase of exotic cars, jewelry, luxury handbags, clothing, private jet rentals, and rental

mansions in Los Angeles, the Hamptons, and Miami.

Members and associates of the SE Enterprise used stolen virtual currency to purchase, among other things, (1) nightclub services ranging up to $500,000 per evening, (2) luxury handbags valued in the tens of thousands of dollars which were given away at nightclub parties, (3) luxury watches valued between $100,000 up to over $500,000, (4) luxury clothing valued in the tens of thousands of dollars, (5) rental homes in Los Angeles, the Hamptons, and Miami, (6) private jet rentals for travel, (7) a team of private security guards, and (8) a fleet of exotic cars, ranging in value from $100,000 up to $3,800,000.

Tangeman met the members of the SE Enterprise in late 2023 when SE Enterprise members Malone Lam, Jeandiel Serrano, Connor Flansburg and others arrived in Los Angeles and needed assistance in booking rental homes with stolen cryptocurrency. Tangeman and Money Exchanger-1 arranged for an initial short-term Airbnb for the SE Enterprise members by receiving stolen cryptocurrency and working with a bulk-cash convertor in the Los Angeles area to obtain fiat cash for the home payment. Tangeman and Money Exchanger-1 charged a fee for their services.

Tangeman knew that these members of the SE Enterprise were stealing cryptocurrency through social engineering schemes and that they had no legitimate employment.

The SE Enterprise members remained in the Los Angeles area following the expiration of this initial rental term. The group soon began working directly with Tangeman to obtain large rental mansions throughout the Los Angeles area, paying Tangeman in stolen cryptocurrency. Tangeman converted the stolen cryptocurrency into fiat cash and worked with real estate agents in Los Angeles to procure large mansions for the SE Enterprise. He paid upfront security

deposits and often the entire lease term, all in cash, for members of the enterprise.

Tangeman also ensured that the lease documents did not contain the true names of the members of the SE Enterprise. Tangeman used fake identification documents or stolen identity documents to complete the rental transactions to conceal the true owners of the homes. This was all done with the goal of concealing their identities. These members of the SE Enterprise were unemployed young men, often under 20 years old and they did not want to draw law enforcement attention for renting homes for $40,000 - $80,000 per month with no legitimate income. Some of these rental homes were valued, according to Zillow, between $4,000,000 up to nearly $9,000,000.

In an August 25, 2024 group text chain Tangeman worked through a substantial cash deposit on a home for Malone Lam. Tangeman, using the username "Tate" and discussed that he "need at least $500k rn [right now] to give to the house owner..is that doable." Lam asked where to send the crypto and Money Exchanger-1 responded with his USDT (Teather) address. Money Exchanger-1 instructed Lam and others to send $550,000 in cryptocurrency and he would deduct transactions from the total owed each time until they accumulated approximately $3,000,000, which was owed to the homeowner. Tangeman then told Lam that, "[t]he move in date all depends on how quickly i can get the usdt because i have to get it exchanged and wired over it all takes time…the 500k is going to be dropped off tonight."

Lam then asked to tour the home and Tangeman told him that it wasn't a good idea because the realtor had listed a fake identity on the lease documents to conceal Lam's true ownership. Specifically, Tangeman stated, "for the house she [realtor] put a person that is 55 years old that is living there with his family…put it under**…so let me see about touring."

4

Tangeman also arranged for rental homes for the members of the SE Enterprise in Miami when the group moved to Miami in September 2025. Tangeman procured these homes through stolen cryptocurrency sent to him by Lam. Following the September 18, 2024 search warrants at Malone Lam's two homes in Miami, Tangeman logged into the security camera system and took screenshots of FBI agents searching the homes.

Throughout the course of the conspiracy, Tangeman also provided crypto-to-cash money laundering services to members of the SE Enterprise. In July 2024, Tangeman helped Lam secure an additional rental home. Tangeman sent Lam a link to the home, followed by "u can move in right away to this one as[]well." Lam responded, "let's do it," and Tangeman replied "Trying to see who has cash atm bc [Money Exchanger 1] doesn't do exchanges anymore." Tangeman followed up with "I'll call u in 5 talking to his new cash guy atm [at the moment]." Tangeman then requested $196,880 in USDT from Lam and requested that it be sent to his USDT address. Lam said he didn't have USDT and asked for an XMR (Monero) address. Tangeman shared his "cash guy's" XMR address and Lam sent the $196,880. Tangeman replied with "Waiting for cash atm…Then going to give it to her."

While in Miami in September 2024, Tangeman provided fiat cash to the members of the SE Enterprise on numerous occasions, in exchange for stolen and laundered cryptocurrency.

Following Malone Lam's arrest in Miami on September 18, 2024, Tangeman instructed another member of the SE Enterprise to travel to Lam's Los Angeles homes, retrieve electronic devices, and destroy them. This member followed the directions and did in fact destroy the devices. This was done to prevent their seizure by law enforcement and impair their integrity for trial.

5

As a member of the SE Enterprise, Tangeman agreed that members of the SE Enterprise would commit at least two racketeering acts as defined by Title 18, United States Code, Section 1961. Tangeman knew that he was engaging in financial transactions in excess of $10,000 which represented the proceeds of unlawful activity, that being the social engineering cryptocurrency thefts being executed by members of the SE Enterprise, to include Lam and others. He further knew that he was changing the cryptocurrency into fiat cash for the SE Enterprise members to disguise the nature, location, source, ownership, and control of the stolen cryptocurrency. Tangeman agrees that it was reasonably foreseeable to him that at least $3,500,000 would be laundered during the existence of the SE Enterprise.

Respectfully Submitted

JEANINE PIRRO  
United States Attorney

By: _____  
Kevin Rosenberg  
Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I have read the Statement of Offense setting forth the facts related to my guilty plea. I have discussed this proffer fully with my attorney, Dwight Crawley, Esq. I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 12/8/2025

_____
Evan Tangeman

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting the Government's proffer of evidence related to my client's guilty plea. I have reviewed the entire proffer with my client and have discussed it with him fully. I concur in my client's agreement with and acceptance of this proffer.

Date: 12/8/2025

_____
Dwight Crawley, Esq.
Counsel for Defendant